[No. 35278-4-I.   Division One.   December 4, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. ENRIQUE VASQUEZ, *Appellant*.

6

*Beth A. Kreger* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Rod H. Scarr, Deputy*, for respondent.

COLEMAN, J. — Enrique Vasquez appeals his conviction for delivery of cocaine and his school zone sentencing enhancement for delivery within 1,000 feet of the Youth Education Program (YEP). He asks this Court to decide whether the trial court erred in denying his motion to dismiss the school zone enhancement because the YEP is not a school. We hold that the YEP meets the statutory definition of a school. We also find that the State presented sufficient evidence to support the finding that Vasquez delivered cocaine. Accordingly, we affirm.

On April 15, 1994, Seattle police conducted an undercover narcotics buy operation in Pioneer Square. The undercover buy officer, Antonio Terry, was killed in an unrelated incident before the trial. Officer Ronald Giroux and Officer Stuart Colman both acted as observation officers during the operation. Officer Colman saw Officer Terry contact Vasquez and talk with him. Officer Terry displayed money to Vasquez, and the two men walked briefly together. Vasquez took out a packet and handed it to Officer Terry, who in turn gave him the money. Officer Terry gave Officer Colman the signal indicating a buy had taken place. As the arrest team approached on bicycles, Officer Giroux saw Vasquez put something into his mouth and begin to swallow. Officer Giroux, who stood closest to Vasquez, ran to him and began an anti-swallowing technique, but nothing was recovered. The police did not recover the buy money, and they found no drugs on Vasquez.

Officer Giroux testified that buy money is not recovered approximately 30 to 40 percent of the time. He further stated that the narcotics envelope bore the signature and initials of Officer Terry, which he had seen 30 to 40 times. He declared that the blue sticker on the envelope indicated that the Washington State Crime Laboratory opened the envelope and tested it. Officer Giroux brought the envelope over from the evidence unit on the day of trial but did not participate in putting any items into the envelope.

Sergeant I. Edwards did not work on this particular operation. He testified that generally, after a buy-bust operation, the officer places the suspected narcotics in a plastic bag or envelope, and, after returning to the station, the officer field tests and packages the drugs. The officer then places the evidence in a manila envelope, puts evidence tape around the envelope, and places it in the evidence room. Sergeant Edwards recognized Terry's signature, initials, and serial number on various parts of the envelope.

Edward Suzuki, a chemical analyst, testified that he received the narcotics envelope on April 18, 1994, from the Seattle Police Department. He testified that the envelope was sealed when given to him and that, other than his evidence tape and the State exhibit sticker, the envelope was in the same condition as when he received it. Suzuki testified that the items in the bag contained cocaine.

Pioneer Square is located within 1,000 feet of the Alaska Building. The YEP is located on part of the third floor of the Alaska Building. Donald Felder, Program Coordinator for the Seattle Public Schools, testified for the State about the attributes of the YEP. The YEP is a General Education Equivalency (GED) program offered by the Seattle Public Schools for high school dropout students. Students arrive at 8:30 A.M. and attend classes until noon. Classes include basics like math, language, reading, and science. The YEP does not observe Temperance and Good Citizenship Day, but Felder testified that most secondary schools did not. The YEP provides educational activities in observance of Veterans Day and Martin Luther King Day, but Felder was not sure what those activities entailed.

We initially consider whether the trial court erred in denying Vasquez's motion to dismiss the school zone enhancement. Vasquez claims that the YEP fails to meet the definition of a school because it does not fulfill various statutory requirements of common schools. He claims that the failure of the State to present evidence that the YEP meets these requirements, such as observing certain

holidays, participating in flag exercises, and requiring certain subjects, indicates that the evidence was insufficient to go to the jury.

■ The trial court's decision to deny a motion is reviewed under an abuse of discretion standard. *State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179, 70 A.L.R.4th 1021 (1985). When a controlled substance violation takes place within 1,000 feet of a school grounds, an additional 24 months shall be added to the presumptive range. RCW 69.50.435(a); RCW 9.94.310(5). RCW 69.50.435(a) refers to two other provisions in order to define the term "school." RCW 28A.150.010 states: "Public schools shall mean [1] the *common schools* as referred to in Article IX of the state Constitution and [2] *those schools and institutions of learning* having a curriculum below the college or university level as now or may be established by law and maintained at public expense." (emphasis added). RCW 28A.150.020 defines common schools: " 'Common schools' means schools maintained at public expense in each school district and carrying on a program from kindergarten through the twelfth grade or any part thereof including vocational educational courses otherwise permitted by law."

■ ■ We believe that the YEP fits squarely within the plain meaning of the statutory definition of a common school. It is "maintained at public expense" and "[carries] on a program from kindergarten through the twelfth grade or any part thereof[.]" RCW 28A.150.020. Contrary to Vasquez's assertion, the use of the term "program" rather than "school" does not prohibit the YEP from being a school. Indeed, the statute itself uses the word "program" to define a "school." The language of the statute is broad and unambiguous. A school includes all publicly funded instruction below 12th grade.

Contrary to Appellant's assertion, the State presented sufficient evidence of the YEP's attributes as a common school. Donald Felder testified that students take basic classes from 8:30 A.M. until noon each day in order to

obtain a GED. Felder also testified that the program participated in several activities required for common schools. *See, e.g.*, RCW 28A.230.160 (Veterans Day educational activities). While it does not participate in all of these activities, the statutory obligations of common schools that the Appellant refers to do not purport to define a common school, but rather, set out activities in which common schools *should* engage. None of these statutory provisions indicates that a failure to carry on a given activity would lead a program to lose its "school" status. *See* RCW 28A.230.140, .150, .160, .170.

Under RCW 28A.150.010, school also includes "those schools and institutions of learning having a curriculum below the college or university level as now or may be established by law and maintained at public expense." The YEP is an institution of learning established by law and supported at public expense. Thus, the YEP also falls under the definition of other schools and institutions.

■ Our statutory analysis corresponds with the legislative purpose of the enhancement provision. In *State v. Shannon*, 77 Wn. App. 379, 383, 892 P.2d 757 (1995), this court recently determined that the legislative purpose of "discouraging the development of violent and destructive drug culture in areas where there are children" applied to the YEP even though the program was located on the third floor of an office building. While the issue of whether the YEP was in fact a school was not squarely before the court, the same rationale applies in this case as in *Shannon*. Students enrolled in the YEP will likely be around the building, and the statute aims to create a drug-free atmosphere for them. The statutory purpose is accordingly well served by treating the YEP as a school. Thus, we affirm the trial court's refusal to dismiss the school zone enhancement; the trial court properly left the question to the jury.

The judgment and sentence of the trial court are affirmed.

The remainder of this opinion has no precedential value.

Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

BAKER, C.J., and WEBSTER, J., concur.