935 P.2d 1321 (1997)
132 Wash.2d 54
The STATE of Washington, Respondent,
v.
Donald F. BECKER, Petitioner.
The STATE of Washington, Respondent,
v.
Nelson GANTT, Petitioner.
No. 63874-8.
Supreme Court of Washington, En Banc.
Argued October 9, 1996.
Decided May 1, 1997.
*1322 Washington Appellate Project, Richard Tassano, Thomas Kummerow; Kitteridge Oldham; and Nielsen & Acosta, Eric Nielsen, Seattle, for Petitioners.
Norm Maleng, King County Prosecutor, Rod Scarr, Steven Fogg, Theresa Fricke, and Cynthia Gannett, Deputy Prosecutors, Seattle, for Respondent.
SANDERS, Justice.
The criminal sentences of defendants Donald Becker and Nelson Gantt were enhanced for delivering cocaine to an undercover police officer within 1,000 feet of school grounds. Defendants contend (1) the State failed to prove the "Youth Education Program" (YEP) in the Alaska Building was a school, (2) the trial court improperly refused their proposed jury instruction, (3) the application of the school zone enhancement statute in this case violates due process, and (4) the trial court's language in its special verdict form was an improper comment on the evidence. The statute at issue provides:
RCW 69.50.435. Violations committed in or on certain public places or facilitiesAdditional penaltyDefenses ConstructionDefinitions
(a) Any person who violates RCW 69.50.401(a) by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance ...
. . . .
(4) Within one thousand feet of the perimeter of the school grounds;
. . . .
... may be punished by a fine of up to twice the fine otherwise authorized by this chapter, but not including twice the fine authorized by RCW 69.50.406, or by imprisonment *1323 of up to twice the imprisonment otherwise authorized by this chapter.....
RCW 69.50.435.
The Court of Appeals affirmed the conviction and enhancement. State v. Becker, 80 Wash.App. 364, 908 P.2d 903, review granted, 129 Wash.2d 1013, 917 P.2d 576 (1996). We reverse the enhancement.

FACTS
Defendants were arrested in downtown Seattle on the corner of Second Avenue and Yesler Way after selling two rocks of cocaine to an undercover police officer in violation of RCW 69.50.401(a)(1)(i), a section under the Uniform Controlled Substance Act (UCSA). The information alleged that the crime occurred "within 1000 feet of the perimeter of school grounds, to-wit: Youth Employment Education Program school [sic] under the authority of RCW 69.50.435(a)." Becker Clerk's Papers (CP) at 1.
This street corner is within 1,000 feet of the Alaska Building, a commercial office building at the corner of Second and Cherry Streets. On a portion of the third floor of the Alaska Building is the Youth Education Program. YEP is a general equivalency degree (GED) program for students who are not able to complete a traditional high school curriculum. YEP has six classrooms, five certified teachers, two or three classified staff, and serves about 80 students. There is no sign identifying the program on the outside of the building. There is, however, a bright purple banner at the third floor reception desk that reads "Seattle Public Schools Youth Education Program" (not school). Becker Report of Proceedings (BRP) at 104-05, 112. The lobby directory also lists YEP as a tenant without identifying it as a school.
YEP is administered by the Seattle School District, and its curriculum is governed by the Office of the Superintendent of Public Instruction (OSPI). It is funded with state money. The curriculum at YEP includes language arts, mathematics, social studies and science, as well as drug and alcohol education, teen parenting, conflict resolution, and health awareness classes concerning AIDS and sexuality. Some of these classes are taught by employees of the Youth Services Bureau, certified drug and alcohol facilitators, and nurses. YEP serves grades 9 through 12, providing services for students up to 21 years of age. While credit for YEP courses will transfer to a traditional high school, students cannot earn a high school diploma at YEP.
Defendants presented considerable evidence at trial that YEP does not have many of the attributes of a traditional school otherwise required by law. YEP does not have a United States flag displayed anywhere on premises, nor does it require students to recite the pledge of allegiance. The program manager for the Interagency School, which is operated by the Seattle Public School District as an umbrella agency for seven alternative programs including YEP, testified that she did not know whether YEP offered any instruction concerning United States or Washington history or the United States or Washington Constitutions. BRP at 116-17. YEP has no sports teams, library, or lunchroom.
OSPI does not identify YEP on its list of school buildings, nor has YEP ever been listed with OSPI as a public school. However, OSPI does list the headquarters of the Interagency School, located approximately two miles from the Alaska Building.
Defendants Becker and Gantt were tried together. The trial court instructed the jury that in order to find defendants guilty of the school zone violation the jury had to find "beyond a reasonable doubt that the defendant[s] delivered a controlled substance within one thousand feet of the perimeter of the school grounds." Becker CP at 23. The court also instructed the jury that
Public School means "common school" and those schools and institutions of learning having a curriculum below the college or university level as established by law and maintained at public expense.

*1324 Common school means any school maintained at public expense in each school district and carrying on a program from kindergarten through the twelfth grade or any part thereof including vocational education courses otherwise permitted by law.
Becker CP at 26.
Defendants' theory at trial was YEP was not a "school" within the meaning of the statute. However, the court refused an instruction proposed by the defense which listed various subjects common schools must offer including the statutory duty to offer instruction about the federal and state constitutions, the statutory duty to "teach about the life threatening dangers of AIDS," a school's duty to observe Temperance and Good Citizenship day, as well as to present educational activities suitable to the observance of Veterans' Day, in addition to the statutory requirement that all schools display a United States flag and have the students recite the pledge of allegiance. Gantt CP at 22. The court did, however, instruct the jury that "[g]rounds means the land surrounding or attached to a house or other building."[1] Becker CP at 28.
The jury convicted both men of selling controlled substances and found by special verdict both had committed the offense "within 1000 feet of the perimeter of school grounds, to-wit: Youth Employment Education Program School [sic]." Becker CP at 5, Gantt CP at 26. The trial court added two years to each defendant's sentence range pursuant to the special verdict, and sentenced each within the enhanced range. Both defendants appealed. Their cases were consolidated in the Court of Appeals, which affirmed the trial court. We granted review. State v. Becker, 80 Wash.App. 364, 367, 908 P.2d 903, review granted, 129 Wash.2d 1013, 917 P.2d 576 (1996).

ANALYSIS
Defendants jointly raise three claims: (1) the State failed to produce sufficient evidence to show that YEP qualifies as a school; (2) the trial court erred in failing to give defendants' proposed jury instruction setting forth the statutory requirements demanded of public schools by the Legislature; and (3) the State violated defendants' due process rights because the special verdict was based upon their proximity to a "school" the presence of which could not be readily ascertained by any understandable or available means. Additionally, Becker alone claims the special verdict form impermissibly commented on the evidence by removing an element of the charge from the jury's consideration, i.e., whether YEP is a "school." Given our disposition of issue number three, we need not decide issues one and two. We do address the special verdict form claim because of its importance.

DUE PROCESS
Defendants contend their right to due process was violated because the special verdict was based on proximity to school grounds the location of which could not be determined by any readily understandable or ascertainable means.
The Fourteenth Amendment due process clause requires fair warning of proscribed conduct. Spokane v. Douglass, 115 Wash.2d 171, 176, 795 P.2d 693 (1990). A statute is unconstitutionally vague if (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it forbids, or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Id. at 178, 795 P.2d 693.
*1325 State v. Coria, 120 Wash.2d 156, 164, 839 P.2d 890 (1992) rejected the contention that RCW 69.50.435 was unconstitutionally vague based upon defendants' claim they did not subjectively know they were dealing drugs within 1,000 feet of a school bus stop. We held "[t]he statute does not forbid conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application. Nor does it create a risk of arbitrary enforcement by the use of inherently subjective terms or by inviting an inordinate amount of police discretion." Coria, 120 Wash.2d at 164, 839 P.2d 890. We concluded RCW 69.50.435 was not unconstitutionally applied because due process does not mandate drug dealers subjectively know they are within a drug free zone for purposes of this statute to have their sentences enhanced. Id. at 166-67, 839 P.2d 890. We recently followed this reasoning in State v. Silva-Baltazar, 125 Wash.2d 472, 482, 886 P.2d 138 (1994), stating "RCW 69.50.435 is a strict liability statute."
However, in Coria we also rejected the defendants' contention that prior notice was lacking because the bus stop in question was not marked or signed and used only intermittently by school children. Coria, 120 Wash.2d at 167, 839 P.2d 890. This was the holding because, although the location of the school bus stop was not marked, information regarding the locations of bus stops was available through such objective means as observing the gathering of school children waiting for their school buses or by contacting local schools or the director of transportation for the school district. Id. Over the dissent of three justices, which would have reversed the conviction on due process grounds in any event, a majority stated:
It may be unrealistic, of course, to expect drug dealers to take these steps, but that is irrelevant to the question whether the statute is unconstitutionally vague. The defendants' failure to have been aware of the law and to have taken action to protect themselves against the enhanced penalty for their criminal conduct is no basis for declaring the statute unconstitutionally vague.
Id. We also noted that it was possible for defendants in that case to obtain a map of the locations from OSPI. Id. at 168, 839 P.2d 890. Likewise, the Court of Appeals, in considering the same question with regard to the sentence enhancement for such a crime in the vicinity of public parks, observed "[t]he location of parks is readily ascertainable and generally does not vary over time." State v. Carter, 64 Wash.App. 90, 94, 823 P.2d 523 (1992).
Vagueness challenges to enactments which do not involve First Amendment rights are evaluated "in light of the particular facts of each case." Douglass, 115 Wash.2d at 182, 795 P.2d 693. Here there are no readily available or ascertainable means by which defendants could have determined the existence of the YEP school grounds. Given the complete lack of information available regarding YEP's status as a school, the reasonable person could not determine YEP is a school according to criteria listed in Coria.
YEP is located on the third floor of the Alaska Building in downtown Seattle. The building has no flag, surrounding sports fields, playgrounds, or other signs that would indicate to a person of reasonable intelligence that a school is housed therein.
The only signs that even reference YEP (the listing in the Alaska Building's lobby directory and the banner on the third floor) do not identify YEP as a school. At most the signs reference the Seattle Public Schools' Youth Education Program. Knowledge of a "program" located in an office building is not notice of a school.
Moreover, the State produced no evidence that a person calling the Seattle School District would be informed that a school is located in the Alaska Building. Instead, the custodian of records for OSPI testified that YEP is not listed as a school in OSPI records. A person who calls OSPI, which our state constitution art. Ill, § 22 places in charge of all public schools in this State, would not be told that a school existed at YEP's location. This is the exact opposite of the situation in Coria, whose defendants could have readily called *1326 OSPI and obtained the specific locations of bus stops because OSPI had such information on file.
While defendants' actual lack of knowledge of the protected zone around YEP is irrelevant to culpability, Coria, 120 Wash.2d at 165, 839 P.2d 890, a readily available means by which they or others of ordinary intelligence could have determined the existence of the protected school zone is a constitutional necessity. Defendants were deprived liberty without that process which is due.

SPECIAL VERDICT FORM
Although the major issue at trial was whether YEP itself was a school within the meaning of the statute RCW 69.50.435, the trial court's special verdict essentially withheld that determination from the jury:
We, the jury, return a special verdict by answering as follows:
[Were] defendant[s], [Donald Becker and Nelson Gantt], within 1000 feet of the perimeter of school grounds, to-wit: Youth Employment Education Program School at the time of the commission of the crime?
Answer: Yes
 ------------
 (Yes or No)
Becker CP at 5; Gantt CP at 26.
Becker claims that this instruction unconstitutionally relieved the State of its burden to prove beyond a reasonable doubt every element of the penalty enhancement statute when it told the jury that YEP was, in fact, a school. This left the jury only to decide whether the offense occurred within 1,000 feet of YEP, not whether YEP is a school. Thus the special verdict amounted to an unconstitutional comment on the evidence.
As an initial matter, although neither party objected to the instruction at trial, an appellate court will consider a claimed error in an instruction if giving such an instruction invades a fundamental right of the accused. State v. Green, 94 Wash.2d 216, 231, 616 P.2d 628 (1980). This special verdict form violated art. IV, § 16 of the Washington State Constitution, which provides:
Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.
"Since a comment on the evidence violates a constitutional prohibition, [a] failure to object or move for a mistrial does not foreclose [him or] her from raising this issue on appeal." State v. Lampshire, 74 Wash.2d 888, 893, 447 P.2d 727 (1968).
Art. IV, § 16 prohibits a judge from conveying to the jury his or her personal attitudes toward the merits of the case. State v. Foster, 91 Wash.2d 466, 481, 589 P.2d 789 (1979). In addition, a court cannot instruct the jury that matters of fact have been established as a matter of law. State v. Primrose, 32 Wash.App. 1, 3, 645 P.2d 714 (1982).
The State argued that YEP was a school, while the defendants disputed this contention. YEP's former names included "Youth Employment Program," and before that "Youth Employment Education Program." YEP is not now nor has it ever been called the "Youth Employment Education Program School." By so identifying YEP in the special verdict form the trial court literally instructed the jury that YEP was a school. This error amounted to an impermissible comment on the evidence in violation of art. IV, § 16.
By effectively removing a disputed issue of fact from the jury's consideration, the special verdict form relieved the State of its burden to prove all elements of the sentence enhancement statute.
Whether the State produced sufficient evidence for a rational juror to find YEP was a school is irrelevant to whether the jury instruction was correctly drafted. See State v. Tongate, 93 Wash.2d 751, 755, 613 P.2d 121 (1980) (finding the evidence was sufficient for the underlying crime, but faulty jury instruction meant enhanced penalty could not be imposed). Nor did the other instructions cure the defect inherent in the special verdict form. The verdict form explicitly stated that *1327 YEP was a school. See State v. Painter, 27 Wash.App. 708, 713, 620 P.2d 1001 (1980), review denied, 95 Wash.2d 1008 (1981) (trial court's incorrect self-defense instruction is still error even when the instructions are read as a whole).
The special verdict form was tantamount to a directed verdict and was error.

CONCLUSION
The trial court erred by giving a special verdict form that commented on the evidence in violation of Const. art. IV, § 16. Moreover, defendants were denied that process constitutionally due when their sentence was enhanced based upon proximity to school grounds the location of which could not be ascertained by any readily accessible means. The Court of Appeals is reversed and defendants' enhanced sentences are vacated.
DURHAM, C.J., and SMITH, GUY and MADSEN, JJ., concur.
ALEXANDER, Justice. (concurring)
I concur in the result reached by the majority. I write specially to make clear that my decision to concur is compelled entirely by my agreement with reasoning that the majority sets forth, but upon which it does not rely. Rather, it addresses the reason "because of its importance." Majority op. at 1324.
In my judgment, we should reverse the Court of Appeals and vacate the sentence enhancement entirely on the basis that the special verdict form fashioned by the trial court constituted a comment on the evidence, thus contravening a provision in the Washington Constitution. As the majority opinion notes, article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Majority op. at 1326. Because the jury was asked in the special verdict form to determine if Becker and Gantt committed the crime of delivery of a controlled substance within 1,000 feet of school grounds, a central issue relating to the enhancement of the sentence was whether the Youth Education Program of the Seattle School District is a "school" within the meaning of RCW 69.50.435. By informing the jury in the special verdict form that the Youth Education Program is a school, the trial court essentially resolved that factual issue. That was an obvious comment on the evidence, the impact of which can only be remedied by vacating the sentence enhancement. See State v. Pam, 98 Wash.2d 748, 760, 659 P.2d 454 (1983) (affirming defendant's convictions but setting aside jury's special verdict that defendant was armed with a deadly weapon because trial court erred in instructing jury in special verdict forms), overruled on other grounds by State v. Brown, 113 Wash.2d 520, 540, 782 P.2d 1013, 80 A.L.R.4th 989 (1989), 787 P.2d 906 (1990).
The dissent suggests that Becker and Gantt did not preserve any error because they did not object to the special verdict form at trial. As the dissent notes, however, an error may be raised for the first time on appeal if it is manifest and affects a constitutional right. RAP 2.5(a)(3). As noted above, the error was of constitutional magnitude. Although not conceding that the error was manifest, the dissent does concede that a major focus of the trial was on the question of whether the Youth Education Program was a school. By telling the jury in the instruction that it was a school the trial court took that issue from the jury. It is hard to view that error as anything other than fundamental and harmful.
These appeals can and should be resolved on the aforementioned state constitutional grounds. If the majority had relied on that reason in reversing the Court of Appeals, as I believe it should, it would have been unnecessary for it to reach the due process issue which forms the core of its opinion. See Allied Daily Newspapers v. Eikenberry, 121 Wash.2d 205, 209, 848 P.2d 1258 (1993) ("when both state and federal constitutional challenges are raised, court first applies state constitution") (citing State v. Coe, 101 Wash.2d 364, 373-74, 679 P.2d 353 (1984)).
*1328 For the reasons stated above, I concur in the result reached by the majority.
JOHNSON, J., concurs.
TALMADGE, Justice (dissenting).
Despite numerous cases upholding the constitutionality of RCW 69.50.435(a) and finding the Youth Employment Program (YEP) of the Seattle School District to be a "school" with "school grounds" for purposes of RCW 69.50.435(a), the majority finds RCW 69.50.435(a) violates due process as applied to appellants Becker and Gantt. The majority also implies YEP does not qualify as a school under the statute. The majority is wrong in its statutory interpretation, its understanding of the statute's policy, and its constitutional analysis. For these reasons, I respectfully dissent.
Donald Becker and Nelson Gantt sold cocaine to undercover Seattle police officers within 1,000 feet of the Alaska Building in downtown Seattle, which houses YEP, an educational program conducted under the umbrella of the Interagency School of the Seattle School District.
YEP is a Seattle School District program offering students up to 21 years of age the opportunity to attain the equivalent of a high school diploma or transfer credit to traditional high schools. The program, located on the third floor of the Alaska Building in downtown Seattle, serves 80 students with six classrooms, five certified teachers, and two to three classified staff. YEP does not have a sign outside the Alaska Building, but is listed on the building directory as "Seattle Public Schools Youth Education Program." YEP's third floor reception area has a bright purple banner which reads "Seattle Public Schools, YEP, Youth Education Program." YEP's curriculum is governed by the State Superintendent of Public Instruction (SPI). YEP is publicly funded and offers classes in language arts, math, social studies, and science, as well as courses in drug and alcohol education, teen parenting, conflict resolution, and health awareness.
Becker and Gantt were charged with selling drugs within 1,000 feet of school grounds in violation of RCW 69.50.435(a); the Informations specifically referred to the "Youth Employment Education Program school." Becker Clerk's Papers at 1; Gantt Clerk's Papers at 1. Neither Becker nor Gantt moved to strike the reference to "school" in the Informations pursuant to CrR 2.1(b).
Becker and Gantt were tried together. The trial court gave a number of instructions to the jury on the sentence enhancement statute, including the definition of "school," "grounds," and "perimeter." The trial court's "to convict" instruction told the jury how to apply the enhancement statute:
If you find the defendant guilty of delivering a controlled substance, it will then be your duty to determine whether or not the defendant delivered the controlled substance within one thousand feet of the perimeter of a school ground. You will be furnished with a special verdict form for this purpose....
If you find from the evidence of Violation of the Uniform Controlled Substances Act, delivery of cocaine, that the State has proved beyond a reasonable doubt that the defendant delivered the controlled substance within one thousand feet of the perimeter of a school ground, it will be your duty to answer the special verdict "yes".
On the other hand, if, after weighing all the evidence, you have a reasonable doubt that the defendant delivered the controlled substance within one thousand feet of a perimeter of a school ground, it will be your duty to answer the special verdict "no".
Becker Clerk's Papers at 30. Finally, the trial court also used a special verdict form which referenced YEP as a school. Becker and Gantt did not object to the special verdict form. The jury convicted both men, finding by special verdict that both had committed the offense within 1,000 feet of a school grounds.
A. RCW 69.50.435(a) Is Constitutional As Applied
RCW 69.50.435(a) enhances the sentence for delivering controlled substances by 24 *1329 months when delivery occurs within certain proscribed areas including in a school or within 1,000 feet of school grounds.
By enacting the school zone enhancement statute, the Legislature sought to discourage the violent and destructive drug culture in areas like schools and school grounds where children are customarily present. State v. Silva-Baltazar, 125 Wash.2d 472, 483, 886 P.2d 138 (1994); State v. Coria, 120 Wash.2d 156, 172-73, 839 P.2d 890 (1992); State v. Shannon, 77 Wash.App. 379, 383, 892 P.2d 757 (1995); State v. Vasquez, 80 Wash.App. 5, 10, 906 P.2d 351 (1995). For alternative school programs like YEP, which serve many students who have been drug involved, the need for a drug free zone is even more pressing. The majority's analysis ignores the legislative purpose in enacting RCW 69.50.435.
The majority finds RCW 69.50.435(a) to violate due process as applied because drug dealers like Becker and Gantt would not have notice of their proximity to YEP and would not be apprised of YEP's presence had they contacted the SPI's records custodian. The majority adopts a "conscientious drug dealer" standard for the application of due process principles that is incorrect in light of our cases analyzing RCW 69.50.435(a). The majority assumes a conscientious drug dealer will carefully ascertain the locale of his or her dealing to scrupulously avoid sales in drug free zones.
We have held drug dealers unreservedly assume the risk of sentence enhancement when dealing drugs in proscribed areas. RCW 69.50.435 is a strict liability statute and specifically indicates it is irrelevant whether a person is aware that he or she is carrying on the prohibited drug activity in a drug free zone:
It is not a defense to a prosecution for a violation of this section that the person was unaware that the prohibited conduct took place while in a school or school bus or within one thousand feet of the school or school bus route stop, in a public park, on a public transit vehicle, or in a public transit stop shelter, ...
RCW 69.50.435(b). In Silva-Baltazar, we stated:
"[D]ue process does not require drug dealers know they are within a drug free zone for purposes of ... RCW 69.50.435." State v. Coria, 120 Wash.2d 156, 166, 839 P.2d 890 (1992).... RCW 69.50.435 is a strict liability statute.... Not only does the Legislature have an interest in imposing strict liability for certain drug activity in specific locations, it has explicitly done so.... [W]e have identified the purpose of RCW 69.50.435 as discouraging "the development of the violent and destructive drug culture in areas where there are children." Coria, at 172-73 [839 P.2d 890]. All participants who are in areas in which the Legislature has determined that children are likely to be present pose an equal threat to the children in terms of exposure to drug activity.
Silva-Baltazar, 125 Wash.2d at 482-83, 886 P.2d 138. See State v. Coria, 120 Wash.2d 156, 165, 839 P.2d 890 (1992) (due process requirement of fair notice does not require drug dealers to know they were dealing drugs inside a drug free zone). State v. Carter, 64 Wash.App. 90, 823 P.2d 523 (1992) (public parks); see also United States v. Falu, 776 F.2d 46, 49-50 (2d Cir.1985) (mens rea not required in federal statute similar to RCW 69.50.435).
In Coria, we rejected the contention RCW 69.50.435 is unconstitutionally vague because the convicted dealer did not know he was dealing drugs within 1,000 feet of a school bus route stop. Coria, 120 Wash.2d at 167, 839 P.2d 890. We also rejected the contention that fair notice was lacking because the bus stops were not marked or signed or only intermittently used by school children.[1]
It is true that the school bus route stops involved here, like most others, are not *1330 marked. Therefore, the defendants could not have immediately determined, simply by looking around during a drug sale, that they were nearby a school bus route stop. Nevertheless, information regarding the locations of the stops was available through such means as observing the gathering of schoolchildren waiting for their school buses, or contacting local schools or the director of transportation for the school district. It may be unrealistic, of course, to expect drug dealers to take these steps, but that is irrelevant to the question whether the statute is unconstitutionally vague. The defendants' failure to have been aware of the law and to have taken action to protect themselves against the enhanced penalty for their criminal conduct is no basis for declaring the statute unconstitutionally vague.
Coria, 120 Wash.2d at 167, 839 P.2d 890 (emphasis added).
There is no substantive difference between the unmarked school bus stops in Coria and the lack of YEP signage outside the Alaska Building. Under Silva-Baltazar, when Becker and Gantt engaged in drug dealing activity, they assumed the risk those activities might be within proscribed areas triggering sentence enhancement.
The majority attempts to distinguish Coria, in which bus stop locations were discoverable through the school district transportation director's office, by asserting the YEP location is not on record with certain SPI personnel. Majority op. at 1325-26.[2] This argument is without merit.
In Coria, we made clear the recording of bus stop routes with school officials provides one means of ascertaining the location of such stops, but it is not an absolute requirement. In Coria, the Court of Appeals expressed concerns regarding ascertaining the locations of the school bus route stops relating to the master map the school district submits to the SPI, including a perceived difficulty in gaining access to the master map. We dismissed these concerns, finding the master map reasonably accessible, but noted:
In any case, the defendants did not need to gain access to the master map in order to have determined the locations of the school bus route stops involved here because that information was readily available through other means.
Coria, 120 Wash.2d at 168, 839 P.2d 890. The Court of Appeals was also concerned with difficulties in interpreting the master map. These concerns we also dismissed stating, "[a]gain, this is irrelevant because accessing the master map is not the only way of learning the locations of the school bus route stops." Id. Moreover, the statute in *1331 Coria defined school bus stops in terms of official maps.
"School bus route stops" means a school bus stop as designated on maps submitted by school districts to the office of the superintendent of public instruction; ...
RCW 69.50.435(f)(3). There is no such "recorded location" requirement contained in the statute's definition of school. RCW 69.50.435(f)(1).
The record here shows that other means of readily ascertaining the location of YEP were available to Becker and Gantt. They could have called the Seattle School District regarding YEP. Had they looked at the Alaska Building's directory, they would have seen the entry "Seattle Public Schools, Youth Education Program." Some 80 students participated in the program, whose hours ran from 7:45 a.m. until 4:00 p.m. The students could be seen leaving and entering the building via the Second Avenue entrance. The coming and going of students at normal school hours and the directory listing are readily ascertainable ways of discovering the presence of a drug free zone:
[T]he type of conduct RCW 69.50.435 proscribes is clear. The absence of a requirement that the drug dealer knew he was in proximity to a school bus route stop does not offend the due process requirement of fair notice. Nor is due process offended by the fact that the statute places on drug dealers the burden of determining by readily understandable and available means the proximity of their illegal activities to school bus route stops.
Coria, 120 Wash.2d at 169, 839 P.2d 890. The requirements of Coria are met in this case.
Implicitly, the majority believes an alternative education program housed in a downtown office building without appurtenant property is not a "school" for purposes of the statute. The majority complains of a lack of a "flag, surrounding sports fields, playgrounds, or other signs" of a traditional school. Majority op. at 1325. The statute is not unconstitutional as applied to Becker and Gantt because YEP is a nontraditional school.
Under RCW 69.50.435(a), YEP is an "institution of learning" with a "curriculum below the college or university level" which is "maintained at public expense," thus meeting the definition of school under RCW 28A.150.010. YEP is funded and directed by the Seattle School District and provides instruction in high school level classes. It meets the RCW 28A.150.020 definition of common schools because it is "maintained at public expense in [a] school district and carr[ies] on a program from kindergarten through twelfth grade or any part thereof...." The language of the school zone enhancement statute is broad and unambiguous. A school includes all publicly funded instruction below 12th grade. Vasquez, 80 Wash.App. at 9, 906 P.2d 351. As the Court of Appeals noted in State v. Shannon, 77 Wash.App. 379, 892 P.2d 757 (1995):
The penalty enhancement, for selling within 1,000 feet of the perimeter of school grounds, plainly extends the zone of protection outward from all real property comprising the school and supporting its activities. Appellant confuses "school grounds" with "playground". "School grounds" is broader than shrubbery or playgrounds; it includes both the physical plant and appurtenant property, if any. Therefore, the absence of appurtenant property does not deprive a school of the drug free zone protection because the school's physical plant is part and parcel of "school grounds".
The 1,000 foot measurement of the prohibited zone is accomplished by "extending radii outward around the property on which the school is located".

Shannon, 77 Wash.App. at 382, 892 P.2d 757 (citations omitted).
Coria, Silva-Baltazar, Vasquez, and Shannon are dispositive of appellants' due process claims. RCW 69.50.435 is a strict liability statute. As such, the absence of a requirement that the drug dealer must know he was *1332 in proximity to a sentence enhancement zone does not offend due process. Nor is due process offended by the fact the statute places on drug dealers the burden of determining by readily understandable and available means the proximity of their illegal activities to sentence enhancement zones. Vasquez and Shannon specifically and correctly applied RCW 69.50.435(a) to YEP. RCW 69.50.435 does not violate due process as applied to Becker and Gantt.[3]
B. The Special Verdict Form Was Not a Comment on the Evidence
Both the majority and concurrence assert the trial court's use of the term "school" in reference to YEP in the special verdict form amounted to a comment on the evidence and improperly removed a fact question from the jury's determination. The special verdict form in question reads in pertinent part:
Was the defendant, Donald Becker, within 1000 feet of the perimeter of school grounds, to wit: Youth Employment Education Program School at the time of the commission of the crime.
Becker Clerk's Papers at 5. The reference to YEP School is derived from the Informations which charged Becker and Gantt. They did not move to strike that extraneous language in accordance with CrR 2.1(b).
The preliminary problem with their argument on this issue is that Becker and Gantt did not preserve any error here because they did not object to the special verdict form at trial. Ordinarily, we will not review an error raised for the first time on appeal. RAP 2.5(a). An exception to that rule is allowed if the error is "manifest" and affects a constitutional right. RAP 2.5(a)(3). We discussed this exception in State v. Scott, 110 Wash.2d 682, 757 P.2d 492 (1988), noting:
RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. The rule reflects a policy of encouraging the efficient use of judicial resources. The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial.
With respect to claimed errors in jury instructions in criminal cases, this general rule has a specific applicability. CrR 6.15(c) requires that timely and well stated objections be made to instructions given or refused "in order that the trial court may have the opportunity to correct any error."
Scott, 110 Wash.2d at 685-86, 757 P.2d 492 (citations omitted). Like Becker and Gantt, the petitioner in Scott failed to object at trial to an alleged error and on appeal sought "to avoid the consequences of his failure to comply with the well settled procedural requirements by elevating his challenge into the constitutional realm'." Id. We further noted:
The requirements of due process usually are met when the jury is informed of all the elements of an offense and instructed that unless each element is established beyond a reasonable doubt the defendant must be acquitted.
Id. at 690, 757 P.2d 492. This due process requirement was met here by the "to convict" instruction regarding sentence enhancement and use of the special verdict form.
Here, the error alleged by Becker and Gantt is neither "manifest" nor does it affect a constitutional right. The alleged error was not manifest because the jury had the question of the definition of "school" and "school grounds" before it throughout the trial. The language of the special verdict form did not decide the issue of whether YEP is a school for the jury, given the entire tenor of the trial, both as to the evidence and the trial court's instructions. Whether YEP qualified as a school was the focus of much of the trial. Much of the direct and cross-examination of *1333 YEP's program manager, Donna Marshall, focused on questions aimed at whether YEP was a school. The attorneys for Becker and Gantt focused on whether YEP was a school in closing arguments, as did counsel for the State.
Moreover, the jury was specifically instructed:
To find the defendant, Donald Becker, guilty of the school zone allegation, as charged, you must find beyond a reasonable doubt that the defendant delivered a controlled substance within one thousand feet of the perimeter of the school grounds.
Becker Clerk's Papers at 22.
It is also difficult to discern how the constitutional error was "manifest" where the trial court's instruction 23, the "to convict" instruction for RCW 69.50.435, was a correct statement of the law and gave clear guidance to the jury about how to fill out the special verdict form. Ordinarily, the "to convict" instruction is a critical benchmark to decide if the jury has been properly instructed. See State v. Emmanuel, 42 Wash.2d 799, 819, 259 P.2d 845 (1953); State v. Stewart, 35 Wash. App. 552, 555, 667 P.2d 1139 (1983); State v. Holt, 56 Wash.App. 99, 104-05, 783 P.2d 87 (1989), review denied, 114 Wash.2d 1022, 792 P.2d 533 (1990). Juries are presumed to follow the court's instructions. State v. Swan, 114 Wash.2d 613, 662, 790 P.2d 610 (1990), cert. denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). The jury had to determine whether or not YEP was a school, and they did.
With respect to the merits of their appeal, Becker and Gantt also failed to prove that the judge had commented impermissibly on the evidence. To be an impermissible comment on the evidence in violation of article IV, section 16, the jury must be able to infer from what the court said or did not say a personal belief regarding the testimony in question or the merits of the case. State v. Browder, 61 Wash.2d 300, 302, 378 P.2d 295, cert. denied, 375 U.S. 869, 84 S.Ct. 93, 11 L.Ed.2d 96 (1963); State v. Foster, 91 Wash.2d 466, 481, 589 P.2d 789 (1979); State v. Ciskie, 110 Wash.2d 263, 283, 751 P.2d 1165 (1988). In Ciskie, this Court found no impermissible comment on the evidence because the trial judge's instruction conveyed no personal attitude toward the merits of the case to the jury; and because the judge instructed the jury specifically that
The law does not permit me to comment on the evidence. I have not intentionally done so. If it appears to you that I have so commented during any of the trial or the giving of these jury instructions, you must disregard such comment entirely.
Ciskie, 110 Wash.2d at 283, 751 P.2d 1165.
The language of the special verdict form tracked the unchallenged language used in the Informations; it did not indicate any personal opinion of the judge. The trial judge here, like the trial judge in Ciskie, gave a specific instruction disavowing any perceived comment. Because the special verdict form does not express the personal opinion or attitude of the judge, and given the judge's specific disavowal of any comment on the evidence, there was no impermissible comment on the evidence. See Ciskie, 110 Wash.2d at 283, 751 P.2d 1165.
The majority's reliance on State v. Tongate, 93 Wash.2d 751, 754, 613 P.2d 121 (1980), Majority op. at 1326, and the concurring opinion's reliance on State v. Pam, 98 Wash.2d 748, 754, 659 P.2d 454 (1983), overruled on other grounds in State v. Brown, 113 Wash.2d 520, 782 P.2d 1013, 80 A.L.R.4th 989 (1989), 787 P.2d 906 (1990), Concurrence at 1327, are misplaced. The Tongate court held application of deadly weapon enhancement to a robbery conviction was improper where the special verdict instruction regarding sentence enhancement failed to indicate the applicable "beyond a reasonable doubt" standard of proof. Tongate, 93 Wash.2d at 755-56, 613 P.2d 121. General instructions regarding the presumption of innocence and the State's burden to prove all elements of the underlying offense beyond a reasonable doubt did not cure the omission. Id.
This case is distinguishable because in addition to the general instructions given in *1334 Tongate, appropriate instructions were given specifically noting the standard of proof applicable to the underlying offense and the school zone allegation. In addition, the separate instruction regarding use of the special verdict form explains under what circumstances the jury may use the form and what standard of proof is to be applied. Tongate is thus inapplicable because the missing reference in the special verdict instruction regarding standard of proof dispositive in that case is not missing here.
As in Tongate, the Pam court also vacated a deadly weapon sentence enhancement where the trial court failed to separately instruct the jury on the State's "beyond a reasonable doubt" burden of proof on the special verdict forms. Pam, 98 Wash.2d at 760, 659 P.2d 454 (1983). Again, the missing instruction in Pam is not missing in this case.
Whether YEP was a school was the focus of much of the trial. Substantial evidence supports the verdict YEP was a school as defined by the school zone enhancement statute. The jury's attention was focused on this issue, and sufficient evidence existed for the jury to find that YEP was indeed a school under the statute. The trial court's use of the term "school" in reference to YEP in the special verdict form, repeating unchallenged language taken directly from the Informations, neither usurped the jury's consideration of the issue, nor affected the ultimate outcome of the case. No manifest constitutional error is present here.

CONCLUSION
The majority opinion contradicts our analysis of the constitutionality of RCW 69.50.435(a) in Silva-Baltazar and Coria. The majority's implicit analysis of the statutory definition of school and school grounds is contrary to the plain terms and purpose of the statute as described in Vasquez and Shannon.
The majority declines to enforce drug free zones in nontraditional school settings for those students, many of whom may be the most in need of protection from the onslaught of the drug culture. The majority's vision of the statute is narrowly attuned to traditional school houses with buildings and playgrounds. This ignores the reality of too many of today's students.
I would affirm the Court of Appeals and uphold both the cocaine delivery convictions and sentence enhancements of defendants Becker and Gantt.
DOLLIVER, J., concurs.
NOTES
[1] Subsequent to trial, the Court of Appeals, Division I, published State v. Shannon, 77 Wash.App. 379, 382, 892 P.2d 757 (1995) where the court concluded that, under 69.50.435, the term "school grounds" was "broader than shrubbery or playgrounds; it includes both the physical plant and appurtenant property, if any." The court concluded that the absence of any appurtenant property does not deprive a school of the drug free school zone protection "because the school's physical plant is part and parcel of `school grounds.'" Id. The court also concluded that because this statutory language is susceptible to only one reasonable interpretation, the rule of lenity did not apply. Id. at 382 n. 1, 892 P.2d 757 (citing State v. McGee, 122 Wash.2d 783, 787, 864 P.2d 912 (1993)).
[1] The State has moved to supplement the record on the question of notice, noting there were signs posted near the Alaska Building advising the public of the 1,000-foot drug free zone. See Affidavit of Theresa Fricke and Maurice Bell, asserting at least 10 signs indicating "Drug Free Zone, YEP School" have been displayed at street level around the Alaska Building since November of 1990. The Court should remand this case for further findings on the notice provided to the public. City of Spokane v. Douglass, 115 Wash.2d 171, 795 P.2d 693 (1990). In Douglass, we reversed and remanded a district court's dismissal of a challenge to a municipal ordinance because the record was inadequate to determine if the ordinance as applied to the defendant was unconstitutionally vague. Douglass, 115 Wash.2d at 183, 795 P.2d 693.
[2] Indeed, petitioners argued at trial that YEP was merely a program and did not qualify as a school because it did not track certain requirements appearing in various statutes and regulations including the failure to offer certain statemandated courses. The defendants offered an instruction describing some of the curriculae and other requirements mandated by statute or rule for schools in general which were not offered by YEP. The trial court properly rejected such an erroneous instruction and instead instructed the jury in the proper statutory language. RCW 69.50.435(f)(1)'s definition of a school incorporates RCW 28A.150.010 and .020.

Courts are not required to give instructions which are erroneous in any respect. State v. Robinson, 92 Wash.2d 357, 361, 597 P.2d 892 (1979). The education code of Washington contained in Title 28A RCW and WAC Title 180 encompasses hundreds of pages. Defendants' proposed instruction was not, nor could it possibly be, an accurate summary of all the characteristics of a "school" as set forth in these statutes and regulations. More to the point, the proposed instruction was a departure from the relevant criteria defining "school" as set forth in the enhancement statute. Thus, defendants' proposed instruction was not an accurate statement of the applicable law and was properly rejected by the trial court.
[3] For a strict liability statute, we should not permit an "as applied" analysis to be a back door means of repeatedly raising a due process challenge to the statute.