166 P.3d 782 (2007)
STATE of Washington, Respondent,
v.
Gene JONES, Appellant.
No. 34414-9-II.
Court of Appeals of Washington, Division 2.
August 28, 2007.
*783 Randall Avery Sutton, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.
James Lewis Reese III, Attorney at Law, Port Orchard, WA, for Appellant.

OPINION PUBLISHED IN PART
PENOYAR, J.
¶ 1 Gene Jones appeals his jury trial convictions for: (1) possession of methamphetamine with intent to manufacture or deliver; (2) possession of an unlawful firearm; and (3) possession of marijuana with intent to manufacture or deliver. The jury returned special verdicts that the methamphetamine and marijuana charges occurred within 1,000 feet of a school bus stop and while armed with a dangerous weapon. Jones challenges the sufficiency of the evidence supporting the school bus stop sentence enhancement and argues that charging the methamphetamine and marijuana in separate counts violates double jeopardy. In his statement of additional grounds (SAG), Jones challenges the sufficiency of the evidence establishing his ownership of the backpack, money, marijuana, and methamphetamine. Additionally, Jones argues that there should not have been a firearm enhancement because the bedroom clutter would have made it difficult for him to reach the guns. He also asserts ineffective assistance of counsel. We affirm Jones's convictions, reverse the school bus stop sentence enhancement, and remand for resentencing.

FACTS
¶ 2 Officers conducted three controlled methamphetamine buys from Magdalena Turrieta using a confidential informant. Based on these controlled buys, officers obtained a search warrant for Turrieta's house. On April 25, 2005, officers of the Kitsap County Sheriff's Office executed the search warrant on Turrieta's house located in Suquamish, Washington. The officers found Jones and Turrieta, Jones's girlfriend, in a locked bedroom of the house. Both Turrieta and Jones resided in the house.
¶ 3 Pictures admitted into evidence at trial show a cluttered bedroom, estimated to be about 10 feet wide and 12 feet long. Detective Elton testified that "[i]t wasn't very big." Report of Proceedings (RP) (Jan. 6, 2006) at 108. Detective Plumb testified that he observed "a pile of stuff . . . anything you can imagine stacked up, piled up in the room." RP (Jan. 6, 2006) at 89. In the bedroom, Detective Plumb found a blue backpack containing $900 in cash and Jones's Washington identification card.
¶ 4 Underneath the mattress in the bedroom, Detective Elton found a locked bank bag containing digital scales and marijuana. He also found two glass pipes with residue. He testified that glass pipes are commonly used to smoke methamphetamine. Next to the pipes were plastic baggies containing methamphetamine.
¶ 5 Detective Plumb had to walk on the items on the floor to reach the closet. There, he found "a couple of rifles and a smaller old shotgun" leaning against the wall in the bedroom closet and a gun leaning barrel-up against the wall near the bed. RP (Jan. 6, 2006) at 91. When Detective Elton pulled the action back, a live round ejected from the gun. Detective Plumb testified that drug dealers often keep firearms accessible for personal protection in drug distribution.
¶ 6 Officers also discovered a closed circuit television system in the house. The cameras were operating, monitoring real time views of outside the house at the time of the search warrant. Officers also found night vision goggles and a police scanner.
¶ 7 The State charged Jones with: (1) possession of methamphetamine with intent to *784 manufacture or deliver[1], while armed with a firearm[2] and within 1,000 feet of a school bus stop;[3] (2) possession of an unlawful firearm;[4] and (3) possession of marijuana with intent to manufacture or deliver,[5] while armed with a firearm and within 1,000 feet of a school bus stop.[6]
¶ 8 At trial, Detective Weiss testified that there is a North Kitsap School bus stop at the intersection of Brockton and Columbia Street. Detective Weiss measured the distance from the bus stop to the corner of Geneva and Brockton as 410 feet. He then measured the distance between the corner of Geneva and Brockton to Jones's driveway as 595 feet. The house was approximately 50 to 75 feet from the road. Detective Weiss estimated the distance from the bus stop to the house as approximately 750 feet, "as the crow flies." RP (Jan. 9, 2006) at 169.
¶ 9 The State asked the trial court to take judicial notice of the Pythagorean theorem. Specifically, the State asked the court to take notice that "A squared, plus B squared, equals C squared" when applied to triangles with a 90 degree angle. RP (Jan. 9, 2006) at 288. The State argued that by using the Pythagorean theorem, the distance between the bus stop and the house is 722 feet. The trial court noted that a sketch was entered that made the intersection appear to be a 90 degree angle, but that there was no specific evidence that it was actually a right angle. The trial court denied the State's request to take judicial notice of the Pythagorean theorem.
¶ 10 During trial, Jones objected to the marijuana and methamphetamine charges being separate counts. He argued that they are both controlled substances and charging them separately constituted double jeopardy. The trial court found that double jeopardy does not apply because the methamphetamine and marijuana charges have different elements. The court gave separate jury instructions for the methamphetamine and marijuana charges. Each instruction specified the controlled substance alleged.
¶ 11 Turrieta testified for the defense that the guns, digital scales, marijuana, methamphetamine, and glass pipes were hers. She stated that she never told Jones about the drugs. She said that she had been dating Jones for 9 years and that they have lived together for "two to three years." RP (Jan. 9, 2006) at 260. They shared the bedroom. During cross examination, Turrieta stated that she and Jones were still in a relationship. Jones also testified that he did not know about the marijuana and methamphetamine.
¶ 12 The jury found Jones guilty of: (1) possession of methamphetamine with intent to manufacture or deliver; (2) possession of an unlawful firearm; and (3) possession of marijuana with intent to manufacture or deliver. The jury returned a special verdict finding that the State proved beyond a reasonable doubt that Jones committed the methamphetamine count within 1,000 feet of a school bus stop. The jury returned another special verdict finding that Jones committed the marijuana count within 1,000 feet of a school bus stop. Jones now appeals.

ANALYSIS

I. School Bus Stop Sentence Enhancement
¶ 13 Jones argues that the trial court erred when it denied his motion to dismiss the allegation that the crimes occurred within 1,000 feet of a school bus stop. Jones made the motion to dismiss during the State's case-in-chief. Relying on Zakel,[7] the State argues that once a jury verdict has been rendered, a motion to dismiss is not appealable.
*785 ¶ 14 The State's interpretation of Zakel is incorrect. We held that pretrial rulings will not be reviewed where the defendant failed to seek review at the time the motion was denied. State v. Zakel, 61 Wash. App. 805, 811, 812 P.2d 512 (1991). Jones made the motion to dismiss during trial. The trial court's ruling on a motion during trial is reviewable. State v. Santos, 104 Wash.2d 142, 145, 702 P.2d 1179 (1985); State v. Vasquez, 80 Wash.App. 5, 9, 906 P.2d 351 (1995). Because Jones made the motion during trial, we review his challenge to the school bus stop sentence enhancement.
¶ 15 When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Jones argues that the trial court's denial of his motion to dismiss was in error because there was not sufficient evidence to find that the drug charges occurred within 1,000 feet of the school bus stop.
¶ 16 Division III of our court held that the terminal point for the school zone enhancement must be the actual site where the offense was committed. State v. Clayton, 84 Wash.App. 318, 322, 927 P.2d 258 (1996). In Clayton, the court found that there was insufficient evidence to uphold the enhancement where the officer measured the distance from the school playground to the defendant's property fence and determined it to be 926 feet 10 inches. Clayton, 84 Wash.App. at 322, 927 P.2d 258. The record was "devoid of any evidence of the measurement to the exact site where the crimes occurred." Id. The crime occurred in a room within the defendant's house. Id at 320, 927 P.2d 258.
¶ 17 Here, the officer used a rolotape to measure west down one street for a distance of 410 feet. He then measured along a street going north to Jones's driveway for a distance of 595 feet. He estimated that the length of the driveway to the house was 50 to 75 feet. The officer did not take measurements for the shortest distance between the school bus stop and Jones's house. He testified that he could not do so because of the slopes and the wooded areas. Based on his measurements along the street and his observations, the officer estimated that the distance between the start of Jones's driveway and the school bus stop was 750 feet. The officer made a diagram of his measurements. On the diagram, the intersection where the streets meet appear to be a 90 degree angle. However, there was no testimony or evidence presented that this was an actual 90 degree angle.
¶ 18 The trial court refused to take judicial notice of the Pythagorean theorem because there was no testimony that the intersection was a 90 degree angle. We decline to analyze the distance based on the Pythagorean theorem when there was no evidence or testimony that the intersection was a 90 degree angle and no testimony about the Pythagorean theorem's application.
¶ 19 Enough uncertainties remain after the officer's testimony to foreclose a rational conclusion beyond a reasonable doubt that the offenses took place within 1,000 feet of a school bus stop. Because there were no direct measurements between the school bus stop and the home, no measurements of the driveway or the house's bedroom, and no evidence showing the angle of the street intersection, the actual distance is unclear. There are Global Positioning Systems (GPS), hard copy maps, digital maps, pedometers, satellite imaging, and numerous other measuring devices that can be used to establish distance beyond a reasonable doubt. None of these technologies was used here. Viewing the evidence in the light most favorable to the State, a rational trier of fact could not have found beyond a reasonable doubt that Jones's possession of drugs occurred within 1,000 feet of a school bus stop. We reverse the sentence enhancement for being within 1,000 feet of a school bus stop and remand for resentencing.
*786 ¶ 20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: VAN DEREN, A.C.J., and ARMSTRONG, J.
NOTES
[1] In violation of RCW 69.50.401(1) and 69.50.401(2)(b).
[2] In violation of RCW 9.94A.602.
[3] In violation of RCW 69.50.401 and 69.50.435(1).
[4] In violation of RCW 9.41.190(1).
[5] In violation of RCW 69.50.401(1), 69.50.401(2)(c) and 69.40.204(c)(14).
[6] The State also charged Jones with two counts of bail jumping in violation of RCW 9A.76.170. He was convicted of one count of bail jumping. He does not appeal the bail jumping conviction.
[7] State v. Zakel, 61 Wash.App. 805, 812 P.2d 512 (1991).