# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48527-3-II |
| Respondent, | |
| v. | |
| CHERYL LYNN NICKERSON, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Cheryl Lynn Nickerson appeals her conviction for two counts of delivery of methamphetamine, arguing that (1) her counsel was ineffective; (2) the trial court made an improper comment on the evidence; and (3) even if each of these errors alone is not reversible error, the cumulative effect of the errors require a new trial. Nickerson also argues that (5) we should not award appellate costs to the State.

We hold that defense counsel was not ineffective because Nickerson was not prejudiced by (1) the failure to file a CrR 8.3(c) motion or (2) the failure to object to testimony implicating that Nickerson had a criminal history, when each is viewed alone. We further hold that (3) the trial court's comment, viewed alone, did not prejudice Nickerson. However, we hold that although each of these challenges standing alone do not justify reversal, together they represent cumulative error that denied Nickerson a fair trial. Finally, we accept the State's concession and waive appellate costs. Accordingly, we reverse and remand for a new trial.

FACTS

A. BACKGROUND FACTS

In February 2014, L.R.[1] acted as a confidential informant (CI) to do "controlled buy[s]" of drugs. 2 Verbatim Report of Proceedings (VRP) at 68. On March 5, L.R. arranged with her handler, Officer Harold Whatley, to make a controlled drug buy from Nickerson. Officer Whatley and Detective Rodney Rauback picked L.R. up and searched L.R. for drugs to ensure she did not have drugs on her. Officer Whatley then gave L.R. pre-recorded buy money to purchase drugs from Nickerson and drove her to a store. L.R. met Nickerson in front of the store and then they went into the store bathroom for five to seven minutes. After leaving the store bathroom, L.R. returned to Officer Whatley's car and handed him a bag of methamphetamine she bought from Nickerson. The officers again searched L.R. but did not find any buy money or drugs on her.

On March 12, L.R. arranged to meet with Nickerson again to buy drugs. The officers searched L.R. to ensure she did not have any drugs on her and gave her buy money. Officer Whatley dropped L.R. off at a home where Nickerson was staying and then parked down the road. After meeting with Nickerson for less than 10 minutes, L.R. left the home. Officer Whatley picked her up, and L.R. gave him another bag of methamphetamine she bought from Nickerson. The officers searched L.R. but did not locate any buy money or drugs on her.

Nickerson was arrested. Following the two controlled drug buys and Nickerson's arrest, L.R.'s relatives notified her that Nickerson had placed a post on Facebook that identified L.R. as a CI. L.R. spoke to the police about the post. Nickerson was charged by amended third

---

[1] We use the informant's initials to protect confidentiality.

information with two counts of delivery of methamphetamine,[2] and with one count of tampering with a witness.

B.    TRIAL PROCEEDINGS

On the first day of trial, defense counsel objected to the witness tampering charge and asked that the trial not go forward with that charge. Defense counsel argued that the charge violated Nickerson's First Amendment rights, there was insufficient evidence to support the charge, and it was prejudicial to Nickerson for the State to go forward with the charge. Without addressing Nickerson's constitutional and prejudice arguments, the trial court ruled that the charge would be presented to the jury for determination if the State set forth sufficient evidence.

Defense counsel also brought a motion in limine under ER 402, 403, and 404(b) to preclude the State's use of evidence relating to Nickerson's criminal history including convictions, arrests, or allegations of prior drug use. The trial court granted the motion.

After jury voir dire, the trial court instructed the jury. The trial court told the jury that the court was prohibited by the state constitution from commenting on the evidence; that the jury's role was to evaluate the evidence; and that if it appeared the trial court indicated in any way its personal opinion concerning any evidence, the jury must disregard this entirely.

1.  Evidence Related to the Controlled Drug Buys

L.R., Officer Whatley, and Detective Rauback testified for the State, among others. The following evidence came from their testimony.

---

[2]A school zone enhancement was added to one count of delivery of methamphetamine, but Nickerson does not assign error to the enhancement.

L.R. had a 2011 forgery conviction and a pending drug possession charge. She became a CI to get the drug possession charge dismissed. She used her cell phone to text and call Nickerson in order to set up their meetings. She purchased methamphetamine from Nickerson on March 5 and 12. L.R. admitted that she used methamphetamine while acting as a CI.

During cross-examination, defense counsel asked L.R. when she first met Nickerson and why she "chose" her. 2 VRP at 175. L.R. stated that she met Nickerson in drug court and chose to target Nickerson for a controlled buy because she knew Nickerson "was using." 2 VRP at 175. Defense counsel did not object to L.R.'s answers. Immediately following L.R.'s testimony, the trial court stated to L.R. "[y]ou're excused. And you're free from this agreement you were under." 2 VRP at 194.

During cross-examination of Officer Whatley, defense counsel asked why police use CIs. Officer Whatley stated that "one of the things I tell them is, [w]hy don't you help get this poison off the street, these people who are dealing drugs, and while you're at it, you can burn the bridges with the people that you're dealing with." 2 VRP at 68. L.R. had told Officer Whatley that she purchased drugs from Nickerson before, and he was able to verify who Nickerson was by using a database that logs Kitsap County offenders. Officer Whatley also recognized Nickerson from her booking photo. Defense counsel did not object to any of this testimony.

In exchange for L.R.'s assistance as a CI, Officer Whatley promised to make a favorable recommendation to the prosecutor regarding L.R.'s pending drug possession charge. The CI contract prohibited L.R. from ingesting illegal drugs. Officer Whatley had no reason to believe L.R. used drugs when she was acting as a CI. She stayed in contact with him and followed his

instructions during her time as a CI. He affirmed L.R. had fulfilled her obligations under the contract.

Officer Whatley stated he only employed strip searches in extreme cases to ensure that a CI does not sneak money or drugs, and that he did not feel it was necessary to strip search L.R. He agreed it was possible L.R. could have been hiding drugs on her person that they would not have found without a strip search. He did not stop Nickerson after the controlled drug buys to recover the buy money. He did not examine L.R.'s phone to review the messages between L.R. and Nickerson. And he never saw L.R. reach into her pants for anything while in his car.

Detective Rauback testified that during the first controlled buy, he arrived at the store and followed the women through the store until they entered the bathroom. L.R. and Nickerson only remained in the bathroom for a few minutes and no one else entered or exited the bathroom in that time. He did not observe an exchange of money and drugs between L.R. and Nickerson. He agreed it was possible someone else could have been in the bathroom. Neither he nor Officer Whatley stopped Nickerson to see if she had the buy money. Detective Rauback confirmed that L.R.'s bra and panties were not searched before the controlled buys and acknowledged that L.R. could have been hiding drugs on her person.

During the second buy, Detective Rauback did not observe an exchange between L.R. and Nickerson because he could only see their feet from under a carport. He saw a man walking back and forth between the carport and some cars parked near the home. He did not see the man interacting with L.R. and Nickerson—the man appeared to be working on the cars.

2. Evidence Related to the Facebook Post

L.R. testified that she felt threatened, intimidated, and scared by Nickerson's Facebook post. The post concerned her because it was visible to people with whom she was not "on the greatest terms" and who knew where she and her children lived. 2 VRP at 192. L.R. stated that she had second thoughts about testifying.

Detective Rauback accessed the Facebook post and stated that Nickerson threatened L.R. through the act of "tagg[ing]" her in the post such that their mutual friends saw it. 2 VRP at 228-29. He confirmed L.R. was upset and felt threatened by the post. Often, individuals with criminal charges "out" witnesses hoping other people will "cast a shadow" on the witness or cause the witness concern. 2 VRP at 229.

The post was admitted into evidence. The post included a picture of L.R., and stated:

This is [L.R.], she is the confidential informant who sign a contract to do controlled buys to get her sentenced [sic] reduced; actually her charge disappeared before her contract was fulfilled. BeWARE! I met her while participating in drug court. She was terminated for lying and causing drama among the clean and sober community. I graduated sanction free in 18 months. My father and [C]am [M]andaville [sic] [,] the retired lieutenant of [K]itsap [C]ounty [S]heriff's [D]epartment attended my graduation. After being terminated from the program [L.R.] caught another drug beef and used her previous deceptive skills to try to get out of losing her kids, and doing any jail time, by setting people up with alleged controlled buys. Needless to say my trial starts tom[orrow]. After a year out on bail, I'm gonna stop letting [K]itsap railroad and scare me into a plea bargain, because I'm scared [sic] of my history. I say screw that I did my time for my past mistakes and I'm done being bullied. Wish me luck

Ex. 9.

3. Dismissal of Witness Tampering Charge, Closing Argument, and Sentencing

After the State rested its case in chief, defense counsel moved to dismiss the witness tampering charge. The trial court held that the evidence concerning the Facebook post was insufficient and granted the motion.

Before closing arguments, the trial court again instructed the jury that if it appeared that the trial court had indicated in any way a personal opinion concerning any evidence, the jury should disregard it entirely.

In closing argument, the State referenced the Facebook post: "You also heard testimony about a Facebook post that the defendant made. What can you infer from that? She was concerned. She was concerned about the informant testifying. Why? Why was she concerned? Why didn't she want her to?" 3 VRP at 301. The State also referred to L.R.'s CI agreement, arguing that she fulfilled it, and that Officer Whatley would not have continued to work with L.R. if she was not credible.

Defense counsel argued that L.R. was not credible and should not be believed because she violated her CI contract by using methamphetamine while acting as a CI. Defense counsel further argued that reasonable doubt existed with respect to the delivery charges because neither officer witnessed a drug delivery by Nickerson; L.R. was never strip searched and could have concealed the drugs in her underwear; no one reviewed L.R.'s phone records to validate L.R. contacted Nickerson to buy drugs; a man was present at the second buy and could have given the drugs to L.R.; and L.R. had motivation to lie in order to clear the possession charges against her.

7

The jury found Nickerson guilty of both delivery counts.[3] Nickerson was sentenced to 99 months. The trial court waived all discretionary LFOs and held Nickerson did not have the ability to pay discretionary LFO's then or in the foreseeable future given the length of her sentence.

Nickerson appeals.

## ANALYSIS

A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Nickerson argues that her counsel was ineffective for failing to file a motion to dismiss the witness tampering charge under CrR 8.3(c) and for failing to object to testimony implicating Nickerson's criminal history. We hold that counsel was deficient in each instance, but Nickerson fails to show that she was prejudiced by counsel's performance.

1.  Standard of Review and Rules of Law

A claim that counsel was ineffective is a mixed question of law and fact that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). In order to show reversal is warranted based on ineffective assistance of counsel, the defendant bears the burden to show (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Failure to make the required

---

[3] The jury also found that a school zone enhancement applied to one of the delivery counts.

showing of either deficient performance or sufficient prejudice defeats an ineffective assistance of counsel claim. *Id.* at 700.

Representation is deficient if it falls "below an objective standard of reasonableness," given all of the circumstances. *Grier*, 171 Wn.2d at 33. There is a strong presumption that counsel's performance was reasonable. *Id.* Because the presumption runs in favor of effective representation, the defendant must show the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). Counsel's conduct is not deficient if it can be characterized as a legitimate trial strategy, but "'[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" *Grier*, 171 Wn.2d at 34 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

A defendant is prejudiced by deficient representation if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* Defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). Prejudice is not established where there is overwhelming evidence supporting a challenged conviction. *State v. Brett*, 126 Wn.2d 136, 200, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121 (1996).

2.     Lack of CrR 8.3(c) Motion

Nickerson argues that her counsel provided ineffective assistance by failing to file a motion to dismiss the witness tampering charge under CrR 8.3(c). Specifically, she contends that the record shows a CrR 8.3(c) motion would have been granted. We agree.

a. Legal principles

To prevail on a claim that counsel's performance was deficient by failing to file a motion, a party must show that the trial court would have granted the motion. *See State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (counsel has no duty to pursue strategies that reasonably appear unlikely to succeed), *review denied*, 171 Wn.2d 1025 (2011). Under CrR 8.3(c) the defendant "may, prior to trial, move to dismiss a criminal charge due to insufficient evidence establishing a prima facie case of the crime charged." The motion must be in writing, supported by an affidavit or declaration alleging no material disputed facts, and may include relevant attachments. CrR 8.3(c)(1). The trial court "shall grant the motion if there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." CrR 8.3(c)(3). The court views all evidence and must make all reasonable inferences in the light most favorable to the State. CrR 8.3(c)(3).

An individual is guilty of tampering with a witness if she attempts to induce a witness in any official proceedings to testify falsely, to withhold any testimony, or to absent herself from such proceedings. RCW 9A.72.120. An attempt to induce a witness to withhold testimony does not depend only upon the literal meaning of the words used; the State can rely on the inferential meaning of the words and the context in which they were used. *State v. Rempel*, 114 Wn.2d 77, 83-84, 785 P.2d 1134 (1990). The effect of the inducement attempt upon the potential witness is not dispositive. *Id.* at 84.

b. Deficient performance

Nickerson relies on *Rempel* in support of her argument that counsel was deficient in failing to file a motion to dismiss the witness tampering charge under CrR 8.3(c). In *Rempel*, a defendant

10

charged with criminal trespass and attempted rape called the victim witness, apologized, stated "it" was going to ruin his life, and requested that the victim drop the charges. *Id*. at 83. The Supreme Court concluded that the defendant's exchange with the victim did not contain a request to withhold testimony, an express threat, nor any promise of reward. *Id.* The *Rempel* court also considered the victim's testimony that the call did not concern or worry her and concluded this context was not dispositive, but tended to disprove the State's claim that the context shows an attempt to induce the victim to withhold testimony. *Id.* at 84. The *Rempel* court reversed the witness tampering conviction. *Id.* at 85.

Here, Nickerson's post identified L.R. as a CI and stated that L.R. was terminated from drug court for "lying and causing drama." Ex. 9. The remainder of the post appears to be an attempt to exculpate Nickerson: she recounts her success in drug court, refers to the buys as "alleged," and asserts that she will not let the county scare or bully her into a plea bargain now that she has done her time for her "past mistakes." Ex. 9. These words do not contain an inducement or threat directed at L.R. to not testify or to change her intended testimony, which is required to secure a conviction for witness tampering. The Supreme Court in *Rempel* found the words insufficient to sustain a witness tampering charge where the defendant repeatedly called the victim, asked her to drop the charges, and said they would ruin his life. *Id.* Nothing in the Facebook post approximates, let alone goes beyond, the statements made in *Rempel* to establish witness tampering.

We must also consider the context of the post. Detective Rauback testified that the threat was the act of "tagg[ing]" L.R. in the post such that their mutual friends saw it. 2 VRP at 228-29. He further testified that often individuals with criminal charges "out" witnesses hoping other

people will "cast a shadow" on the witness or cause the witness concern. 2 VRP at 229. Also,

L.R. testified that she felt threatened, intimidated, and scared by Nickerson's Facebook post. The

post concerned her because it was visible to people with whom she was not "on the greatest terms"

and who know where she and her children live. 2 VRP at 192. L.R. also confirmed she had second

thoughts about testifying. But neither L.R. nor Detective Rauback offered specific testimony about

who, if anyone, would harm L.R. or her children as a result of the post or why they would do so.

And the effect of the inducement attempt upon the potential witness is not dispositive.

Nickerson also argues that, under CrR 8.3(c), defense counsel could have submitted the

Facebook post and a declaration containing the following agreed facts: that Nickerson made the

Facebook post, that L.R. was tagged in the post, and that L.R. felt intimidated by it.[4] Under CrR

8.3(c), the trial court "shall grant the motion if there are no material disputed facts and the

undisputed facts do not establish a prima facie case of guilt." CrR 8.3(c)(3). CrR 8.3(c)(3) requires

that the evidence, and all reasonable inferences from the evidence, be viewed in the light most

favorable to the State. But even when the facts are viewed in the light most favorable to the State,

given the lack of any threat or inducement to L.R. to absent herself from the court proceedings or

change her testimony, the trial court would have granted a CrR 8.3 motion if defense counsel had

submitted one.

Nickerson also relies on *State v. Harris*, 164 Wn. App. 377, 263 P.3d 1276 (2011) and

argues that there was no tactical reason for failing to move for dismissal under CrR 8.3(c). In

*Harris*, the defendant was charged with first degree assault of a child. *Id.* at 381. Before trial, the

---

[4] Nickerson relies on the trial court's conclusion that *Rempel* is distinguishable from this case. But our review of ineffective assistance of counsel is de novo. *Jones*, 183 Wn.2d at 338.

State added a second count of first degree assault of a child, alleging a pattern or practice of abuse

of the child. *Id.* Defense counsel moved to dismiss at the close of the State's case, and the trial

court granted the motion based on insufficient evidence. *Id*. at 382. On appeal, the court reversed

the defendant's conviction on the first count and concluded it was unnecessary to determine

whether defense counsel was ineffective for failing to file a CrR 8.3(c) motion to dismiss the

second count. *Id.* at 388. But the court stated, "we cannot perceive any legitimate trial strategy in

counsel's failure to file" a CrR 8.3(c) motion before trial. *Id.* at 388 n.6. The court further

concluded:

> The record is clear that [defense] counsel was convinced that the State had no evidence sufficient to prove that [the defendant] had engaged in a pattern or practice of abuse [. . . .] In fact, after the trial court denied defense counsel's motion for a bill of particulars, noting that defense counsel's motion resembled a [CrR 8.3(c)] motion, defense counsel stated an intention to file a [CrR 8.3(c)] motion. But defense counsel ultimately failed to file a [CrR 8.3(c)] motion, which prejudiced [the defendant] by allowing the jury to hear evidence of TH's prior abuse in the context of the State's attempt to prove that it was [the defendant] who engaged in a pattern or practice of abusing TH.

*Id.*

Similar to the counsel in *Harris*, Nickerson's counsel recognized the lack of factual support

for the witness tampering charge and the potentially prejudicial effect of the evidence supporting

that charge, as evidenced by counsel's request for the charge to not go forward into trial.

Therefore, we must analyze whether counsel's conduct—the failure to file a CrR 8.3(c) motion—

was a reasonable trial strategy. *Grier*, 171 Wn.2d 33-34.

Reasonable trial strategy for an attorney includes carrying out the duty to research relevant

law. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). If an attorney unreasonably fails

to research or apply relevant statutes without any tactical purpose, that attorney's performance is

constitutionally deficient. *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 102, 351 P.3d 138 (2015). Here, based on the record, defense counsel seemingly failed to research and apply the relevant option of filing a CrR 8.3(c) motion to dismiss. We conclude that defense counsel's failure to utilize a CrR 8.3(c) motion was not reasonable, and thus, counsel provided deficient representation.

### c. Prejudice

Nickerson argues that counsel's failure to move to dismiss the witness tampering charge under CrR 8.3(c) prejudiced her because this charge allowed the jury to hear otherwise inadmissible evidence which, in turn, supported the otherwise uncertain delivery convictions.[5] We conclude that even though the evidence at issue would not have been independently admissible, its admission did not prejudice Nickerson because there was other evidence to support the delivery convictions.

### i. Independent admissibility of Facebook post and related evidence

Nickerson argues that absent the witness tampering charge, the jury would not have seen the Facebook post and testimony about the post's impact on L.R. would have been inadmissible, and the State could not have relied on it in closing because this evidence was irrelevant. We agree.

---

[5] Nickerson also argues that her counsel's deficiency and the resulting prejudice were compounded by counsel's failure to request an instruction asking the jury not to consider the evidence for witness tampering on the delivery charges. To establish ineffective assistance based on counsel's failure to request a jury instruction, the defendant must show that he was entitled to the instruction. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). Nickerson does not do so. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998). Thus, we do not consider this issue.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). Even where a hearsay exception might apply, they do not make otherwise irrelevant or inadmissible evidence admissible.[6] *See State v. Sublett*, 156 Wn. App. 160, 198-99, 231 P.3d 231 (2010), *aff'd*, 176 Wn.2d 58, 292 P.3d 715 (2012) (holding evidence was not admissible under a hearsay exception because even if the evidence fell under that exception, it contained inadmissible statements discussing the alleged conduct of another person that created the victim's state of mind).

The Facebook post revealed that Nickerson had been in and knew L.R. from drug court, had a prior criminal history and had served time for criminal offenses. L.R. testified that she felt threatened and concerned for herself and her children as a result of the post. Detective Rauback testified that the post upset L.R. and provided his opinion that the post constituted a threat. Finally, during closing argument, the State referenced the Facebook post, implying that the post concerned Nickerson because she was guilty of the delivery charges: "You also heard testimony about a Facebook post that the defendant made. What can you infer from that? She was concerned. She was concerned about the informant testifying. Why? Why was she concerned? Why didn't she want her to?" 3 VRP at 301.

This evidence suggested that if Nickerson committed drug offenses before, she likely did it again and that she was a bad person for making L.R. feel intimidated. Thus, this evidence of

---

[6] The State argues that the Facebook post was admissible as an admission by a party opponent pursuant to ER 801(d)(2). ER 801(d)(2) provides that where a statement is an admission by a party opponent, it is not hearsay. But even if the Facebook post was an admission by a party opponent and thus not hearsay, the Facebook post is not admissible if it is inadmissible character evidence. *See State v. Foxhoven,* 161 Wn.2d 168, 174-75, 163 P.3d 786 (2007).

past criminal acts involving drugs and evidence showing Nickerson acted in a way that made L.R. feel threatened was inadmissible character evidence.

The State argues the Facebook post was admissible as evidence of consciousness of guilt, relying on *State v. Moran*, 119 Wn. App. 197, 81 P.3d 122 (2003), *review denied*, 151 Wn.2d 1032 (2004). This argument is unpersuasive.

The issue in *Moran*, a first degree manslaughter case, was the admissibility of a letter the defendant wrote to a friend asking him to influence the testimony of another witness. *Id*. at 217-18. The letter contained derogatory language referencing the witness and was signed "Your homie Jeramie." *Id.* at 218. The trial court admitted the letter, and on appeal, the defendant argued that the prejudice in admitting the letter outweighed the probative value of the letter because it did not contain a threat to a witness, and the offensive language and use of the term "homie" raised an image of gang violence and made him appear aggressive. *Id.*

The *Moran* court concluded that evidence of the defendant trying to prevent a witness from appearing and testifying at trial was relevant because it was evidence of the defendant's guilt. *Id.* at 218-19. Thus, the *Moran* court held that although the language of the letter was prejudicial, the trial court's decision that the probative value outweighed the prejudicial effect was not an abuse of discretion because the letter could be reasonably interpreted as a request for the friend to get the witness to change her stance on Moran's guilt. *Id.* at 219.

*Moran* is distinguishable. Unlike the letter in *Moran*, the Facebook post did not contain an inducement or request to try to get L.R., or to try to get someone else to persuade L.R., to not

testify or to change her testimony. Unlike the letter in *Moran* which evidenced the defendant's guilt, the revelation of Nickerson's past drug offenses was inadmissible character evidence to show conformity with past action. Thus, absent the tampering with a witness charge, the Facebook post and associated testimony would not have been admissible.

ii.    Other evidence on the delivery charges

Nickerson argues that excluding the Facebook post and the associated testimony could have changed the trial outcome because the remaining evidence for the two delivery charges was not strong. We disagree.

A defendant is prejudiced by deficient assistance if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. We must evaluate the prejudicial effect of objectionable evidence against the backdrop of the other evidence in the record. *State v. Hendrickson*, 129 Wn.2d 61, 80, 917 P.2d 563 (1996).

Nickerson does not show a reasonable probability that the trial result would have been different if the Facebook post and related testimony was excluded. The evidence shows that Officer Whatley and Detective Rauback observed L.R. meeting Nickerson at the two controlled drug buy locations. Each meeting between L.R. and Nickerson lasted a short time, less than 10 minutes, indicating these were probably not social meetings. There was no other explanation for L.R. and Nickerson's meetings. L.R. was searched before and after each controlled drug buy. The officers did not find drugs on L.R. before the buys, nor did they find any buy money or drugs on her after the buys. Immediately following the buys, L.R. brought the bags of methamphetamine to Officer Whatley. This evidence shows that L.R. gave Nickerson the buy money and Nickerson gave L.R. the methamphetamine. Detective Rauback saw L.R. walking from the controlled buy

locations back to Officer Whatley's car during both buys, and he did not see L.R. pulling anything from her underwear or other possible hiding places. Officer Whatley also never saw L.R. reach into her pants for anything while in his car.

We view the prejudicial effect of the jury's knowledge about the Facebook post and related testimony against the backdrop of the evidence in the record. *Hendrickson*, 129 Wn.2d at 80. Here, the evidence in the record supports Nickerson's guilt on the delivery charges. Based on this record, it is unlikely the result of trial would have been different had the evidence in the Facebook post and related testimony not been admitted. Because the prejudice prong of the *Strickland* test is not met, we hold that Nickerson has not established ineffective assistance of counsel.

        3.       Failure to Object to Certain Testimony Regarding Nickerson's Criminal History

Nickerson argues that because the testimony from Officer Whatley and L.R. revealed Nickerson's criminal history, her counsel was ineffective for failing to object to this testimony. We agree that counsel was deficient for failing to object to this evidence, but Nickerson fails to establish prejudice to support her ineffective assistance of counsel claim.

A fair assessment of whether an attorney was deficient requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 689. The decision of when or whether to object is a classic example of trial tactics; thus, only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989).

Nickerson argues that her counsel provided ineffective assistance by failing to object to Officer Whatley's testimony that CIs are told that they can help remove drug dealers from the streets and "burn bridges" with drug dealers was prejudicial because it "strongly indicated Nickerson was such a person." Br. of Appellant at 22. Nickerson takes this testimony out of context. Officer Whatley's remark was not directed at Nickerson but was merely a part of Officer Whatley's general response to a question about why police use confidential informants. This testimony does not present an egregious circumstance related to testimony central to the State's case, and counsel's failure to object to this testimony cannot independently justify reversal.

Nickerson next argues that her counsel provided ineffective assistance by failing to object to Officer Whatley's testimony that L.R. told him she purchased from Nickerson before and that he was able to identify Nickerson through "I/LEADS" and her booking photo, and to L.R.'s testimony that she knew Nickerson from drug court and targeted Nickerson because she knew Nickerson was still using.

This evidence shows that Nickerson sold drugs to L.R. in the past, Nickerson was using drugs at the time of the buys, and Nickerson had a history of criminal convictions from which she had a booking photo and was placed in the county offender database. There is no legitimate strategy for failing to object to this testimony. And the trial court would likely have sustained an objection had one been made because the trial court had granted defense counsel's motion in limine to preclude the State's use of evidence of Nickerson's criminal history and allegations of prior drug use. Therefore, we hold that defense counsel was deficient for failing to object to this testimony.

But, as discussed above, given the other untainted evidence, it is unlikely the result of trial would have been different had the challenged evidence been excluded pursuant to a defense objection. Therefore, Nickerson's ineffective assistance of counsel challenge fails.

B.     COMMENTS BY THE TRIAL COURT

Nickerson argues that the trial court committed reversible error when it made an improper comment implying that L.R. had fulfilled her CI contract, thereby undermining a defense strategy and prejudicing Nickerson. We hold that the trial court's comment was improper, but the comment alone did not prejudice Nickerson such that it constitutes reversible error.

    1.      Standard of Review and Rules of Law

The Washington Constitution, article IV, section 16, prohibits the trial court from "'conveying to the jury his or her personal attitudes toward the merits of the case.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). The trial court errs when it communicates to the jury its feelings as to the truth value of a witness's testimony. *State v. Francisco*, 148 Wn. App. 168, 179, 199 P.3d 478, *review denied*, 166 Wn.2d 1027 (2009). The trial court's personal feelings need not be expressly conveyed to the jury; it is sufficient if they are merely implied. *Levy*, 156 Wn.2d at 721.

Claims of constitutional error are reviewed de novo. *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014). We review the facts and circumstances of each case when determining whether a trial judge's conduct constituted a comment on the evidence. *Francisco*, 148 Wn. App. at 179.

Judicial comments on the evidence are presumed to be prejudicial. *Levy*, 156 Wn.2d at 723. The burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted. *Id.* An impermissible comment does not prejudice a defendant where the untainted evidence overwhelmingly supports the conviction. *State v. Lane*, 125 Wn.2d 825, 839-40, 889 P.2d 929 (1995).

A prejudicial comment may be cured by a trial court's instruction to the jury to disregard such comments. *See State v. Elmore*, 139 Wn.2d 250, 276, 985 P.2d 289 (1999) (comment on the evidence was cured by instruction to disregard the same), *cert. denied*, 531 U.S. 837 (2000); *Egede–Nissen v. Crystal Mountain, Inc.* 93 Wn.2d 127, 141, 606 P.2d 1214 (1980) (isolated judicial comment "may be cured by an instruction"). Jurors are presumed to follow the court's instructions. *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

2.      Trial Court's Comments were Improper

Immediately following L.R.'s testimony, the trial court stated to L.R. "[y]ou're excused. And you're free from this agreement you were under." 2 VRP at 194. Nickerson argues that this was an improper comment on the evidence because by stating L.R. was free from her CI contract, the trial court impliedly conveyed its personal feeling that she had abided by and had done everything required of her in the CI contract. We agree.

Improper comments include those that communicate the trial court's feelings to the jury about the truth value of a witness's testimony. *Francisco*, 148 Wn. App. at 179. The comment that L.R. was "free" from her CI contract implied the contract was still in place, unbroken by L.R.'s methamphetamine use. 2 VRP at 194. Thus, this comment conveyed the trial court's personal

feeling that it agreed with Officer Whatley's testimony that L.R. had fulfilled her CI contract despite using methamphetamine in violation of the contract and was improper.

       3.     No Prejudice

But Nickerson's argument that the trial court's comment prejudiced Nickerson is not persuasive. Although prejudice is presumed when a trial court comments on the evidence, that presumption is overcome by the untainted evidence supporting Nickerson's delivery convictions. Moreover, Nickerson was not stripped of her ability to challenge L.R.'s credibility. The jury was able to hear that L.R. had used drugs in the past, that she had a 2011 forgery conviction on her record, and that she agreed to be a CI in an attempt to avoid a pending drug possession charge. The trial court's comment did not undermine Nickerson's defense strategy of showing L.R. was not credible.

Nickerson cites to *Becker*, 132 Wn.2d 54, for the proposition that whether a comment on the evidence is prejudicial or harmless depends on whether the comment was directed at a disputed issue at trial. Nickerson argues that whether L.R. violated the CI contract was a disputed issue at trial. We disagree.

In *Becker*, the Supreme Court held that the trial court removed from the jury's consideration whether a certain institution was a school when it asked the jurors in a special verdict form to determine if the defendants were "within 1000 feet of the perimeter of school grounds, to-wit: Youth Employment Education Program School [YEP]." *Id.* at 64. The *Becker* court held that by so identifying YEP in the special verdict form, the trial court had instructed the jury that YEP was a school. *Id.* This amounted to an unconstitutional comment on the evidence. *Id.*

The trial court's comment is not analogous to the instruction in the special verdict form in *Becker.* The jury was not tasked with deciding whether L.R. fulfilled her CI contract. Rather, the State had to prove to the jury that Nickerson knowingly delivered methamphetamine. Thus, unlike the instruction in *Becker*, the trial court's comment did not relieve the State of its burden of proving the elements of the crime.

A prejudicial comment may be cured where the trial court gives instructions to the jury to disregard such comments. *See Elmore*, 139 Wn.2d at 276. And the jury is presumed to follow the court's instructions. *Kalebaugh*, 183 Wn.2d at 586. Here, the trial court so instructed the jury following voir dire and before closing arguments.

Nickerson relies on *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968), to argue that a jury instruction to disregard improper comments by the trial court is not determinative as to whether prejudice was rendered. We disagree with this narrow reading of *Lampshire.*

The *Lampshire* court concluded that under the particular facts of that case, a curative instruction could not remedy the prejudice rendered. 74 Wn.2d at 892. And cases decided after *Lampshire* have concluded a prejudicial comment may be cured where the trial court instructs the jury to disregard such comments. *See Elmore*, 139 Wn.2d at 276; *Egede–Nissen*, 93 Wn.2d at 141. Here, the trial court's instructions to the jury to disregard comments on the evidence by the court cured any prejudice. Thus, we hold that although the trial court's comment was an improper comment on the evidence, it alone did not prejudice Nickerson such that it constituted reversible error.

23

C.    CUMULATIVE ERROR

Nickerson argues that defense counsel's ineffective representation and the trial court's comment on the evidence amount to cumulative error warranting a new trial.  We agree.

The cumulative error doctrine applies in instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial.  *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).  The test to determine if cumulative error requires reversal of a defendant's conviction is whether the totality of circumstances substantially prejudiced the defendant and denied her a fair trial.  *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014).

Above, we examined each of Nickerson's arguments independently and concluded that standing alone, they each did not justify reversal.  But to evaluate cumulative error, we must look at the totality of the circumstances.  *Id*. at 690.

Here, the State's ability to sustain the delivery charges largely rested on L.R.'s testimony.  The evidence that came in as a result of defense counsel's deficient conduct showed that Nickerson was in drug court, had a prior criminal history, and had served time for criminal offenses; L.R. targeted Nickerson for a controlled buy because she knew Nickerson was using; Nickerson had sold drugs to L.R. in the past; and L.R. felt threatened by Nickerson's post and was concerned for herself and for her children.  And the trial court's improper comment bolstered L.R.'s testimony, engendered sympathy for L.R. and her children, and casted a negative light on Nickerson.  The cumulative prejudicial effect of the errors substantially prejudiced Nickerson and denied her a fair trial.  Therefore, we reverse and remand for a new trial.

24

No. 48527-3-II

APPELLATE COSTS

Nickerson argues that we should decline to impose appellate costs because she is indigent. The State concedes it will not seek costs in this case. We accept the State's concession that it will not seek costs in this case and waive appellate costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, C.J.

_____
Melnick, J.