

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,        )
                           )        No.  40627-0-III
          Respondent,       )
                           )
     v.                     )
                           )
CARLOS GUILLERMO MARTINEZ-   )        UNPUBLISHED OPINION
CARAZA,                     )
                           )
          Appellant.        )

COONEY, J. — Carlos Martinez-Caraza appeals his conviction for second degree

assault.  He argues the trial judge made an improper comment on the evidence and the

prosecutor committed prejudicial misconduct during summation.  We disagree with both

arguments and affirm.

BACKGROUND

On the evening of February 17, 2024, Mr. Martinez-Caraza and his neighbors,

Alan Keck[1] and Shelly Keck, were drinking outside of the Kecks' home.  Over the course

of the evening, the trio appeared to become "more and more intoxicated" and "at some

---

[1] Because multiple witnesses at trial share a last name, we refer to those witnesses
by their first names for clarity when applicable.  No disrespect is intended.

point, things shifted from [a] friendly environment to a hostile environment," leading to an argument. Rep. of Proc. (RP) at 93. Mr. Martinez-Caraza departed the Kecks' property, went into his own yard, and continued quarreling with the Kecks. The argument culminated with Mr. Martinez-Caraza striking Alan in the head with an object and then hitting him "at least two additional times." RP at 97, 157. Most witnesses could not identify the object Mr. Martinez-Caraza used to strike Alan. Witnesses described the object as "a pole or something" and as a "pickaxe." RP at 98, 157. The strikes to Alan's head rendered him unconscious. Neighbor Walter Hewitt witnessed the incident and called 911.

Alan was transported to the hospital and treated for his injuries. Mr. Martinez-Caraza was charged with assault in the second degree with an allegation that he was armed with a deadly weapon during the commission of the crime. The case proceeded to a jury trial.

At trial, Shelly testified the three began arguing after socializing for about an hour, and Mr. Martinez-Caraza was asked to leave. Shelly then saw Mr. Martinez-Caraza hit Alan with something, but she "couldn't tell you what it was." RP at 131.

Sergeant Randy Wells of the Klickitat County Sheriff's Office testified that he responded to the scene and spoke with Mr. Martinez-Caraza who denied striking Alan. Sergeant Wells later spoke with Alan at the hospital and testified he "observed blood on the top of [Alan's] head" and "blood down along [Alan's] face." RP at 58. Sergeant

Wells took photographs of Alan's injuries, and the State moved to admit them into evidence as exhibits 1, 2, and 3. The court admitted the photographs. Before the court allowed the State to publish the exhibits to the jury, the court inquired:

> THE COURT: Are the photographs graphic?
>
> [THE STATE]: There are—there are—there is blood.
>
> THE COURT: Okay. I just want to make sure the parties—the jurors are aware of that before we look at them. There is some graphic—maybe somewhat graphic or blood on those photographs, so. You may publish.

RP at 59.

Walter testified that he and his wife were on their front porch on the night of the incident and witnessed Mr. Martinez-Caraza strike Alan's head. Walter testified he saw Mr. Martinez-Caraza hit Alan two more times after the first blow and then turn around and "toss[] whatever he had in his hand." RP at 98. Walter said he could not tell what Mr. Martinez-Caraza was holding but stated that it looked like a "pole" and that "it was just long and that's about all I could tell." RP at 98. Walter then called 911. The 911 call was admitted into evidence and played for the jury. Walter stated during the call that the object Mr. Martinez-Caraza used to hit Alan "looks like a piece of an old weight bench." RP at 113. He also told the 911 operator that Mr. Martinez-Caraza appeared to be "digging in his car for something." RP at 105.

Chaunte Hewitt, Walter's wife, testified that she saw Mr. Martinez-Caraza arguing with the Kecks and witnessed Mr. Martinez-Caraza strike Alan "in the head with a

pickaxe." RP at 157. Chaunte testified that after she saw Alan get hit, she "ran over to Alan and stood in front of him to guard him from [Mr. Martinez-Caraza], because [Mr. Martinez-Caraza] was doing something with his car." RP at 160. Chaunte said she thought Mr. Martinez-Caraza was "hiding what he used or he's going to grab another weapon." RP at 160.

Alan testified that he did not remember being hit by Mr. Martinez-Caraza. He described his injuries as a head wound requiring "six staples" to close and another smaller laceration that did not require staples. RP at 177. Alan also testified he had a bruise that extended down to his jawline and lasted for a couple of weeks. Alan stated the staples were visible when he looked in a mirror and that his coworkers noticed them. At the time of trial, Alan had "a dent [and] a raised scar" at the site of his injuries. RP at 179.

Gregory Stoner, MD, testified he treated Alan for a scalp injury. Dr. Stoner said the "laceration" was "approximately six centimeters," and there "was a secondary, smaller laceration that was next to it as well." RP at 143. Dr. Stoner testified the larger laceration required staples to close.

Danielle Carpenter, a DNA forensic scientist with the Washington State Patrol, testified that she tested a pickaxe recovered from the scene for DNA and blood. Ms. Carpenter testified "no blood was detected on any of the swabs." RP at 84. Ms. Carpenter also stated if the weapon was "cleaned or anything like that" or if the victim

was "not bleeding when the object first contacted" him, then there is "no guarantee that

blood is going to transfer" to the weapon.  RP at 84.

Mr. Martinez-Caraza called Kristin Harty-Connell, a forensic scientist, as a

witness.  Ms. Harty-Connell testified that she tested the pickaxe for DNA, and Alan was

excluded as a contributor of any of the DNA found on the pickaxe.

At the conclusion of the evidentiary portion of the trial, the parties presented their

closing arguments.  During the State's summation, the prosecutor argued:

> Now we've heard testimony from several witnesses—and I will
> submit to you—they're—some of the witnesses were far away; they were
> 30 feet away, 45 feet away—it's unclear exactly how far away they were,
> but they weren't right next to Mr. Martinez-Caraza when he struck Alan in
> the head.
>
> They were honest when they testified—they couldn't tell what it was.
> In the 911 call that you heard from [Walter], he described it as a pole or
> something. He later described it as a piece of a weight bench. Clearly, the
> axe that was admitted into evidence could fit that description.

RP at 242.

During the defense's closing argument, Mr. Martinez-Caraza's attorney

argued:

> Here today, the State's saying—well, it may not have been the
> pickaxe; it may have been something else. But where is that something
> else? We don't have any testimony from the Sheriff's Office—the deputies
> there—well, we found this huge stack of instruments, like we—or weapons,
> like, I don't know, Roadrunner's private cache of things and we just picked
> this pickaxe, but it could have been something else. No, we have no
> testimony that supports anything—that's pure speculation that something
> else may have done this.

5

The State is tied to the pickaxe; they're stuck with that. They can't now just say—well, it may have been something else—and try to patch it up. I can say it's something else, sure—I just told you. If that pickaxe was used on somebody's head, you'd expect a worse injury. Something else happened here. I don't have to prove it, but they can't hide behind it and say oh, we proved it beyond a reasonable doubt—no.

. . . .

You heard from the State's own witness—no blood. You heard from my witness this morning—no DNA on this.

RP at 259-60.

Finally, during the State's rebuttal argument, the prosecutor stated:

I want to point out just a few other things. Carlos—Mr. Martinez-Caraza—most of the witnesses testified that in the time while they were waiting for law enforcement, he was messing with something in his car. He was in his car; he was back and forth between the scene and somewhere else. He had plenty of time to take that pickaxe and wipe it down with something.

I know there's no testimony to say that he actually did so, but it's not unreasonable to infer that in the time it took for law enforcement to arrive—and we've listened to the 911 call—at least five minutes of it—and law enforcement hadn't arrived by then. Five minutes is an eternity for someone to take something and wipe it down or put it somewhere else.

RP at 262-63.

The jury found Mr. Martinez-Caraza guilty of assault in the second degree and found he was armed with a deadly weapon at the time of the commission of the crime.

Mr. Martinez-Caraza was later sentenced.

Mr. Martinez-Caraza appeals.

ANALYSIS

WHETHER THE COURT MADE AN IMPERMISSIBLE COMMENT ON THE EVIDENCE

Mr. Martinez-Caraza argues the trial judge made an improper and prejudicial comment on the evidence. We disagree.

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. A judge may not "'[convey] to the jury his or her personal attitudes toward the merits of the case' or instruct[] a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). We review allegations of constitutional violations, including judicial comments on the evidence, de novo. *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012).

A two-step analysis is applied to determine if a judicial comment requires reversal of a conviction. *Levy*, 156 Wn.2d at 723. We first examine the facts and circumstances of the case to determine whether a trial judge's remarks rise to a comment on the evidence. *State v. Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007). "The touchstone of error in a trial court's comment on the evidence is whether the feeling of the trial court as to the truth or value of the testimony of a witness has been communicated to the jury." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). Only if we conclude the court's comment on the evidence was improper do we presume the comment is prejudicial, "and

7

the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *Levy*, 156 Wn.2d at 723.

Mr. Martinez-Caraza argues the court improperly commented on the evidence when it remarked that exhibits 1, 2, and 3 were potentially "graphic" and "blood[y]." RP at 59. The State responds that the court's remark did not amount to an impermissible comment on the evidence.

After photographs of the victim were admitted, and just prior to their publication to the jury, the court warned the jury, "Okay. I just want to make sure the parties—the jurors are aware . . . [t]here is some graphic—maybe somewhat graphic or blood on those photographs, so. You may publish." RP at 59. Mr. Martinez-Caraza did not object to the court's comment.

We generally decline to review claims of error not raised in the trial court. RAP 2.5. Howbeit, an exception to that rule permits a party to raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). This exception is limited and does not allow all asserted constitutional claims to be raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007). Instead, the alleged error must be "manifest," which requires a showing of actual prejudice. *Id*. at 935. To establish actual prejudice, the appellant must make a plausible showing that the alleged error had practical and identifiable consequences during trial. *State v. WWJ*

*Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999). "[T]he focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009).

Under RAP 2.5(a)(3), we conclude there is no manifest error affecting a constitutional right. Although Mr. Martinez-Caraza's claimed error is constitutional in nature, the trial court's statement does not warrant review for the first time on appeal because the statement does not amount to an impermissible comment on the evidence. The court did not express any feelings or opinions as to the weight, credibility, or veracity of the evidence. Rather, after confirming with the State that the photographs depicted blood, the trial judge simply cautioned the jury that the photographs they were about to view were potentially "graphic" and may contain "blood." RP at 59. Because the court did not improperly comment on the evidence, Mr. Martinez-Caraza has failed to make a plausible showing that the alleged error had practical and identifiable consequences during trial. [2]

---

[2] Even if the judge's remark rose to the level of a comment on the evidence, the jury was instructed by the court that "[i]f it appeared to you that I have indicated my personal opinion in any way either during trial or in giving these Instructions, you must disregard this entirely." RP at 231. Jurors are presumed to follow the court's instructions. *State v. Jackson*, 145 Wn. App. 814, 824, 187 P.3d 321 (2008).

WHETHER THE PROSECUTOR COMMITTED MISCONDUCT DURING SUMMATION

Mr. Martinez-Caraza contends the prosecutor committed prejudicial misconduct during closing argument. The State responds that the prosecutor did not commit misconduct and even if he did, it was not so flagrant and ill intentioned so as to be incurable by an instruction. We agree with the State.

Prosecutorial misconduct is grounds for reversal if "'the prosecuting attorney's conduct was improper and prejudicial.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). "[T]he defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). "It is misconduct for a prosecutor to state a personal belief as to the credibility of a witness." *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). A prosecutor's argument must be confined to the law stated in the trial court's instructions. *State v. Walker*, 164 Wn. App. 724, 736, 265 P.3d 191 (2011). Improper vouching generally occurs if the prosecutor expresses his or her personal belief as to the credibility of a witness or indicates evidence that was not presented during the trial supports the witness' testimony. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010).

When a prosecutor mischaracterizes the law and there is a substantial likelihood that the misstatement affected the jury verdict, the prosecutor's actions are considered improper. *Id.* However, prosecutors have "'wide latitude'" during closing argument to

argue reasonable inferences to be drawn from the evidence at trial. *State v. Crossguns*, 199 Wn.2d 282, 296-97, 505 P.3d 529 (2022) (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 713 P.3d 673 (2012) (plurality opinion)).

When examining a prosecutor's alleged misconduct, the conduct is not viewed in isolation. *Monday*, 171 Wn.2d at 675. Instead, the conduct is looked at "in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *Id*. (internal quotation marks omitted) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). The purpose of viewing the conduct in this light is to determine if the prosecutor's conduct was prejudicial to the defendant, and it will only be viewed as prejudicial when there is a substantial likelihood the misconduct affected the jury's verdict. *Id*. Therefore, when viewing misconduct, the court should not focus on what was said or done but rather on the effect that flowed from the misconduct. *Emery*, 174 Wn.2d at 762.

If a defendant fails to object at trial to the prosecutor's alleged misconduct, then the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Id*. at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the

jury verdict.'" *Id*. at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

Mr. Martinez-Caraza argues the prosecutor improperly vouched for the credibility of witnesses and argued facts not in evidence during closing argument. The State responds that the prosecutor did not vouch for the credibility of any witness and properly argued the reasonable inferences to be drawn from the evidence.

*Vouching*

During summation, the prosecutor stated the witnesses "were honest when they testified" they "couldn't tell what" object Mr. Martinez-Caraza used to strike Alan. RP at 242. Mr. Martinez-Caraza did not object to this statement. In context, this statement did not constitute vouching.

The fact that witnesses could not identify the object Mr. Martinez-Caraza used was not controversial nor disputed. Moreover, the prosecutor's comment did not bolster the credibility of any of the State's witnesses. Indeed, the witnesses testified they did not know what the weapon was and their testimony was, if anything, favorable to Mr. Martinez-Caraza's theory of the case. During the defense's closing argument, Mr. Martinez-Caraza's attorney pointed out that "the State's saying—well, it may not have been the pickaxe; it may have been something else. But where is that something else?" RP at 259. Defense counsel also argued the pickaxe the State alleged was used in the assault "was not what was used here." RP at 260. Reviewed in context, the prosecutor's

comment did not constitute vouching. Even if we were to find misconduct, Mr.

Martinez-Caraza cannot show prejudice because the prosecutor's statement was

consistent with his own argument. Furthermore, the statement was not so flagrant and ill

intentioned as to be incurable by an instruction to the jury.

*Arguing Facts not in Evidence*

During the State's rebuttal argument, the prosecutor posited that Mr. Martinez-

Caraza "had plenty of time to take the pickaxe and wipe it down or something." RP at

263. The State recognized that there was "no testimony to say that he actually did so, but

it's not unreasonable to infer that in the time it took for law enforcement to arrive" that

Mr. Martinez-Caraza could "wipe [the pickaxe] down or put it somewhere else." RP at

263. Again, Mr. Martinez-Caraza did not object to this argument. The prosecutor did not

argue facts that were not admitted in evidence.

First, the State's argument was responsive to Mr. Martinez-Caraza's argument that

there was "no blood" and "no DNA" on the pickaxe and that the only conclusion to be

drawn based on this lack of evidence was that the pickaxe "was not what was used here."

RP at 260.

Second, the prosecutor was arguing reasonable inferences that could be drawn

from the evidence. The prosecutor merely pointed out that Mr. Martinez-Caraza had the

time and opportunity to wipe down the pickaxe. The prosecutor explained that there was

"at least five minutes" between the call to 911 and when law enforcement arrived on

scene.  RP at 263.  The 911 call was admitted and played for the jury.  Thus, the jury was aware that it took over five minutes for the deputies to respond to the scene from the time of the call.  Moreover, at least two witnesses testified they noticed Mr. Martinez-Caraza rifle through his vehicle before law enforcement arrived.  Finally, Ms. Carpenter testified that the lack of blood on the pickaxe could be attributed to it being "cleaned."  RP at 84.

Even if the prosecutor committed misconduct, Mr. Martinez-Caraza cannot show prejudice.  Indeed, had he objected, a curative instruction to the jury would have obviated any prejudice.  The prosecutor did not commit misconduct.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Hill, J.

14